Larry Lee TUCKER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15709.

Court of Criminal Appeals of Oklahoma.

March 10, 1971.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Larry Lee Tucker, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the offense of Assault and Battery with a Deadly Weapon; his punishment was fixed at twenty years imprisonment and he appeals.

As briefly stated as possible, the evidence at the trial adduced that Marian Martin was 27 years old and the mother of two children, ages seven and four. She testified that on April 1, 1969, she finished shopping at the Big Value Grocery at 23rd and Eastern about five or ten minutes before 9:00 p. m. and she and her children got in her car at the parking lot. As she started to lock the door on the passenger side, a young man, whom she identified in court as the defendant, jerked the door open, got in holding a pistol in his hand and said, "I have got this pistol cocked and I will shoot your little boy if you don't do what I tell you to, bitch." (R 135, 136). He directed her along a route of various turns and at about 13th and Lindsay he took over the wheel and drove, going out Lincoln to the Expressway and north to about 85th and Robinson. The defendant then pulled off the side of the road and demanded that she lie down under the steering wheel. Upon her refusal, the defendant struck her and shoved her down and attempted to remove her girdle, holding the gun pointed toward her children in the back seat. After a scuffle he had sexual intercourse with her. The defendant then drove to Eastern and 122nd Street and stopped again on the shoulder. He told her to remove her dress and felt her bra, inquiring if she had any money. He told her to lie down, and upon her refusal, struck her twice and again had sexual intercourse with her holding the gun on her children. The defendant then turned the car around and ordered her to get out. She asked if she could take her children and the defendant threatened to kill them if she did not take them. She testified that as she was reaching into the car to get her shoes and purse, the defendant shot her in the chest and as she was stumbling, he fired a second shot striking her in the back. The defendant then quickly drove away toward Oklahoma City. She and the children started to walk toward some houses and were met by a car driven by a George Richmond, who took her to the hospital. She denied ever having smoked marihuana and denied ever having seen the defendant before that night.

George Richmond testified that a little after 9:00 that evening, he was traveling on Eastern and at about three-quarters of a mile south of Memorial Road he came upon Marian Martin and her children in the road. He said she was injured and took her to the hospital.

Dr. Harold D. Thiessen testified that on April 1, 1969, he examined Marian Martin in the hospital and determined that she had a gunshot wound in the right shoulder and a gunshot wound in the pelvic frame or belt area entering from the back.

The defendant testified that he was fourteen years old in April, 1969, and had known Marian Martin since the last two weeks of March. Their first acquaintance was when she picked him up in her car as he was walking from his sister's house. During this period of time she introduced him to smoking marihuana, had engaged in acts of intercourse with him, and had given him money and presents. She called him at his mother's house on April 1st, and told him to meet her at the Big Value Grocery. He did so, and got in her car in the parking lot with her two children. They drove by a circuitous route to about 80th and Eastern; he having taken over the driving at 30th and Phillips. They smoked marihuana, and she had the children get behind the car and at her invitation they had sexual intercourse in the front seat. They then drove to a little past 81st and Eastern and stopped, where she put the children behind the car and, at her invitation, they again had sexual intercourse. She then asked him if he wanted to make some money and pushed his head down between her legs, whereupon he got mad, and hit her. He cursed her and she slapped him. The defendant testified to events as follows (R 283–285):

"She pushed me back up against the door on the passenger's side and the door came open and she retch up to the glove compartment and I pushed her back and she opened the driver's side and crawled out and she pulled her skirt down and I pushed the button and the door from the glove compartment opened and there was a little .22 in there * * I grabbed the gun and put it in my left hand and she was around in the back and I walked up to her and I grabbed her on the shoulder, on the right arm, and I asked her what did she think I was and she started cussing me out and pushed me * * * I had the gun in the left

hand and I grabbed her other arm with my right hand and I asked her, 'Who do you think I am' and she said something and started to push me and I tripped and fell against the door * * *

A. When she screamed, she fell against the door. She fell on her knees and she fell on her face and she tried to get back up and fell back down on the ground.

Q. What did you do?

A. I tried to grab her and the gun went off again.

Q. When you tried to grab her, where was she?

A. She was face down about from me to you."

When he saw that Mrs. Martin did not move he got scared and drove away. He denied intending to pull the trigger and said the shooting was entirely accidental. The defendant denied having ever smoked marihuana before meeting Mrs. Martin and denied ever owning a pistol.

On cross-examination defendant testified that he and his mother signed a waiver of constitutional rights and two statements while he was in police custody.

In rebuttal, Officer McMullen, of the Oklahoma City Police Department, testified about the interrogation of defendant and the obtaining of the two statements.

On defendant's rebuttal, he testified that everything he wrote in the statements was untrue and that he wrote them at Officer McMullen's direction, upon McMullen's promise that he would "get off a lot easier." He denied that McMullen told him he could have a lawyer and testified that the first opportunity he had to consult a lawyer was at his trial around June 5th.

█ The defendant's first proposition contends that the verdict is not supported by the evidence. This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude the defendant is guilty as charged, the Court of Criminal

Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Gray v. State, Okl.Cr., 467 P.2d 518. We, therefore, find this proposition to be without merit.

The defendant further alleges, in his third proposition, that he was placed in jeopardy a second time in that he had previously been convicted of rape. We are of the opinion that the two offenses are separate and distinct acts. The rape had occurred and ended prior to the shooting. This Court has previously held that two or more criminal acts may be committed during the course of one continuing transaction without giving rise to a former jeopardy situation after a trial on one of the criminal acts. Ryan v. State, Okl.Cr., 473 P.2d 322. We therefore find this proposition to be without merit.

The fourth proposition asserts the trial court erred in admitting the defendant's confession. The defendant concedes that the warnings of the right against self-incrimination seem to meet the *Miranda* requirements and that the defendant's mother was present and signed the statement. He contends that because of the defendant's age and experience that it is doubtful how much of the warnings he actually understood. The trial court properly instructed the jury as to the voluntariness of the statement and limited the jury's consideration to that of possible impeachment of the defendant's testimony (R 38 and 39). It would appear to this Court from examining the defendant's testimony that he was, in fact, quite mature and knowledgeable despite his age. We further note that the defendant's mother, who was present, was not called as a witness to discredit the testimony concerning the adequacy of the warnings, the understanding thereof, and the voluntariness of the statements. We are of the opinion that the trial court properly allowed the introduction of the statements as proper impeachment procedure.

The defendant's fifth proposition asserts that the defendant was denied a fair trial because of newspaper publicity concerning the trial. There is absolutely no evidence in the record to indicate that any juror had, in fact, read the articles or were influenced thereby. We further note that the jury was passed for cause by the defendant. We, therefore, find this proposition to be without merit.

The defendant's second proposition asserts that the punishment was excessive. This Court has consistently held that it does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so exessive as to shock the conscience of the Court. Clouse v. State, Okl.Cr., 389 P.2d 1002. In the instant case the jury saw fit to believe the testimony of the State and sentenced the defendant, who was then fifteen years of age, to twenty years imprisonment. From the foregoing statement of facts we cannot conscientiously say that the sentence shocks the conscience of this Court.

In conclusion we observe that the record is free of any error which would justify modification or reversal and under such circumstances we are of the opinion that the judgment and sentence should be, and the same is hereby, affirmed.

BRETT, J., concurs.

NIX, J., not participating.