STATE of Tennessee, Appellee,

v.

Rudolph Ernest MENN, Jr., Appellant.

Rudolph Ernest MENN, Jr., Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 12, 1984.

Permission to Appeal Denied by Supreme Court April 2, 1984.

L. Bruce Peden, Cain, Moore & Peden (on appeal and on post-conviction), Columbia, Joseph Fowlkes (at trial), Pulaski, for appellant.

William M. Leech, Jr., State Atty. Gen. & Reporter, David M. Himmelreich, Asst. State Atty. Gen., Nashville, Clayton Lee, Asst. Dist. Atty. Gen. (at trial), Pulaski, Richard Dunavant, Asst. Dist. Atty. Gen. (on post-conviction), Pulaski, for appellee.

## OPINION

BYERS, Judge.

This is a delayed appeal from a conviction of armed robbery, for which the defendant was sentenced to serve twenty years, and an appeal from a post-conviction

proceeding in which the trial judge found the defendant had competent counsel at the convicting trial.

The only issue raised by the defendant on each of these appeals is a claim that the trial judge erroneously found he was represented by competent counsel at the convicting trial.

The judgments are affirmed.

The pertinent evidence shown by this record in relation to the armed robbery shows that a man, by the use of a pistol, took a Honda automobile from the driver at 1:15 a.m. on May 27, 1981, in Giles County.

On June 15, 1981, officers in Nebraska apprehended the defendant, who was driving the Honda automobile. The defendant attempted to escape from the Nebraska officers, and after a chase which cut across wheat fields and pasture land the vehicle was wrecked and burned.

At the trial of the case the owner of the vehicle positively identified the defendant as the man who took the vehicle from him in this state. The defendant testified and gave rambling testimony in which he claimed to have been hiking in the mountains of New Mexico on the date of the crime with a person he knew only as Paul. He gave an incredible story of how he got possession of the vehicle.

In his post-conviction proceeding, the defendant claimed that his counsel was not prepared for trial because he did not interview prosecution witnesses, that the lawyer made no effort to obtain alibi witnesses for him, that he did not file a discovery motion or confer sufficiently with him before trial, that the lawyer did not cross-examine a key state's witness, and that he did not voir dire the jury or make a closing argument.

All of the witnesses in this case who saw the defendant commit the crime or in possession of the vehicle thereafter lived out of the area of the crime. The record shows that the defendant's attorney, through talking with the district attorney general, was aware of what each of the witnesses would say. When the witnesses arrived at the courthouse on the day of trial, the attorney interviewed each of them and was aware of what their testimony would be. The attorney testified, and the record shows, that, because of the evidence in the case, no amount of investigation could have discredited these witnesses.

The defendant alleged the attorney did not attempt to obtain alibi witnesses who could show he was in New Mexico at the time of the offense. Specifically, the defendant says he advised the attorney to contact his sister in Texas who could give him names of these witnesses. The lawyer testified he did not recall this being raised but testified he did call a business place in New Mexico to attempt to locate witnesses suggested by the defendant but was unable to do so. The attorney testified the defendant was only able to give him the first name of these proposed witnesses who were, like the defendant, drifters.

This record shows there was no need for the lawyer to file a discovery motion because the state's attorney had revealed to him all of the matters which he would have obtained by a formal motion.

The core of this case is the absolute perjury committed by the defendant either at trial or in the post-conviction hearing and the probable perjury committed by the witnesses at the post-conviction proceeding.

In the post-conviction hearing, the defendant's story of his whereabouts and his companions was totally different from his story at trial. At trial he claimed to be with a man named Paul in the mountains of New Mexico. In the post-conviction hearing he claimed he was with his sister in Texas. One of the sisters who testified in the post-conviction hearing testified that the defendant had possession of the vehicle in Texas even before it was stolen in Tennessee. The defendant gave rather incongruous reasons for committing perjury at the first trial.

In this case, the state had a strong case against the defendant. The defendant's attorney correctly predicted that he would be convicted. In several pre-trial conferences with the defendant, counsel became aware

that he was dealing with a difficult client. Because of this, and the defendant's rejection of a plea bargain for a ten year sentence, the attorney attempted to soft-pedal the case before the jury in an effort to minimize the punishment.

 Based on this theory, defense counsel did not cross-examine the man who was robbed because he was an impressive witness. The attorney was satisfied he could not damage the testimony but only inflame the jury by cross-examination, and give the witness added opportunity to reemphasize his testimony. In the context of this case, the decision not to cross-examine was a legitimate trial tactic.

In the matter of voir dire of the jury, the evidence shows the jury had been in session some time. As the record shows and it is generally known, in a small community attorneys are well acquainted with the jury and in many instances need not voir dire them to determine if they constitute a fair and impartial body. There is nothing in this record to show this jury was not a fair and impartial jury.

The trial attorney testified he did not make a closing argument to the jury because the state's attorney made a very short opening argument and because the defendant's testimony was so unbelievable that he was of the opinion he would do better to cut off the state's final argument by waiving argument. This was a legitimate trial tactic, especially in this case.

The upshot of the whole matter is that the state had a strong case against the defendant. The attorney attempting to defend the case was saddled with a perjurer for a client, whose perjury was so inartful it was obvious.

The trial judge found, and this Court affirms his finding, that the defendant had competent counsel at trial. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975).

The purpose of the Post-Conviction Act is to provide a vehicle for good faith claims of constitutional deprivation to be shown. Unfortunately it is often used as a platform for perjury. We are confident prosecutorial authorities will proceed in the proper manner to bring such matter to trial in cases where a case for perjury can be proven.

DWYER and TATUM, JJ., concur.