Sammy VAN WOUNDENBERG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–239.

Court of Criminal Appeals of Oklahoma.

Jan. 27, 1976.

Pete Silva, Jr., Asst. Public Defender, Tulsa County, for appellant; Sammy Van Woundenberg, pro se.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Harold T. Garvin, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Sammy Van Woundenberg, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–73–701, for the offense of Murder, in violation of 21 O.S.1971, § 701, ¶ 3. His punishment was fixed at Life imprisonment in the State penitentiary, and from said judgment and sentence he has perfected a timely appeal to this Court.

At the trial, Herschell Aunko testified he was originally charged as a co-defendant with the defendant, however, this

charge had been amended to that of accessory after the fact, to which he had entered a plea of guilty and was presently awaiting sentencing. On April 17, 1973, he stated that he had attended a party at the defendant's apartment, to which he had been accompanied by his younger brother, Perry Aunko and one Joanne Williams. At defendant's apartment he met Oscar Lewis Cates, the deceased. The defendant, out of the presence of Cates, told Aunko that he planned to "roll" Cates, but that there would ·be no shooting. He, as well as most of the other persons at the party, had been drinking beer and had been doing so for several hours. Besides himself, Joanne Williams, Perry Aunko, Larry Swake, Debbie Sue Potter, John Van Woundenberg, Oscar Lewis Cates, the deceased, and the defendant were all present at the party. Sometime after midnight the defendant's sister, Glenda Childers, arrived at the apartment. Sometime thereafter, Aunko observed Glenda Childers enter one of the bedrooms with Cates. A short time later, after hearing Glenda Childers' voice from the bedroom, Aunko followed the defendant into the bedroom and saw the defendant pull Cates off of Glenda Childers. Glenda Childers then left the room. Defendant then had Cates kneel down next to the bed and while pointing a gun at his head removed his wallet. During this time the defendant's brother, John Van Woundenberg, entered the room. The defendant turned his head and fired a bullet into Cates' head. Aunko asked the defendant if the bullets were blanks to which the defendant replied that they were not.

Following the shooting, Aunko told Joanne Williams to leave the apartment. The defendant then brought Cates' body out of the bedroom to the stairway. Cates appeared to still be alive at this time. Aunko and his brother Perry removed Cates' body from the apartment. They then returned to the apartment where the witness observed the defendant and John Van Woundenberg rip Glenda Childers' blouse and scratch her arm and knee in an attempt to make it appear as though Cates had attempted to rape her. Aunko and his brother than returned to their home where Aunko was later arrested.

Glenda Childers testified she was the defendant's sister. On April 17, 1973, she shared an apartment at 616 South Quincy Street in Tulsa, Oklahoma, with her two brothers, the defendant and John Van Woundenberg. She arrived at the apartment at approximately 2:30 a. m. and found several persons there including Oscar Lewis Cates. Witness Childers was told by the defendant that Cates had some money and that she was to get Cates into the bedroom so he, the defendant, could get the money. Witness Childers introduced herself to Cates and discussed going to bed with him. She entered the bedroom alone, having decided to go to bed, but Cates followed her making advances. At this time she called for the defendant who entered the bedroom and pulled Cates off. She left the bedroom and went to the kitchen. After a few minutes she heard a gunshot. She then left the apartment, returned approximately ten minutes later and heard the defendant say that the gun had gone off accidentally. The defendant then tore her blouse and scratched her arm telling her that this would make it appear as though Cates had attempted to rape her. Thereafter, she called the police and told them of the attempted rape when they arrived.

The gun used in the shooting had been in her purse but was removed by the defendant shortly before the shooting. Witness Childers finally testified that she originally had been charged with murder in this case, but the charge had been reduced to that of accessory after the fact, to which charge she had entered a plea of not guilty.

Perry Aunko testified he was the 16-year-old brother of Herschell Aunko. He stated that he had attended the party at defendant's apartment on April 17, 1973. He was told by his brother that the defendant wanted them to help him "roll" a man. He

observed the defendant standing over Cates in the bedroom with a gun in his hand. He heard the gunshot and left the room. He helped carry Cates' body downstairs and he then returned to his home.

Steve Beck testified he was employed as a detective for the Tulsa Police Department and that he and another officer responded to a call at 616 South Quincy, discovering the body of a man in the back yard. The man was still alive and was taken to a hospital. Officer Beck then proceeded to the Van Woundenberg apartment and examined the bedroom where he found blood on the mattress. He also found blood spots on the apartment house stairway and sidewalk leading to the side of the apartment building. In conclusion, Officer Beck testified that he examined the person of Oscar Cates but found no wallet.

Roy Hunt testified he was employed as a Tulsa Police Officer and that on April 17, 1973, he and Investigator Roger Harmon went to Okmulgee, Oklahoma, with arrest warrants for both Van Woundenberg brothers. There they arrested John Van Woundenberg, but the defendant was not present. The two officers returned to Tulsa where the defendant was arrested at a residence located at 1338 East 8th Street. The defendant was found hiding under a bed. A small pistol, State's Exhibit No. 1, was found laying on the floor next to the defendant's knee. A search of the defendant revealed six $20.00 bills, one $10.00 bill and one $5.00 bill. When the defendant was advised that he was under arrest for murder and advised of his rights, he replied, "Well, I can beat that. That will be reduced to manslaughter." (Tr. 364)

Dr. Leo Lowbeer testified he was a medical doctor and pathologist and that he had performed an autopsy on the body of Oscar Lewis Cates. In his opinion the cause of death was the result of a gunshot wound to the head, fired at very close range. He recovered a .22 caliber bullet from the brain.

Joanne Williams testified she attended the party at defendant's apartment on April 17, 1973, the night of Cates' death. Her testimony was substantially the same as that testified to by previous State's witnesses who attended the party.

Debbie Johnson testified she was at defendant's party on the night Oscar Cates was killed and that she observed Glenda Childers at the party but that her clothes were not torn nor her arm scratched. The remainder of her testimony was substantially the same as the other State's witnesses who had attended the party at defendant's apartment.

D. A. Roberts testified he was employed as a Tulsa Police Officer. He testified that he had recovered a lead slug, State's Exhibit No. 21, from Dr. Leo Lowbeer, which had been removed from the deceased. No ballistics tests had been made on the slug due to the deformed condition of the slug.

The State then rested.

D. A. Roberts testified in behalf of the defendant that he interviewed Herschell Aunko at the Tulsa City Jail on the morning following the shooting. He testified that no tests for powder burns had been performed on Aunko to determine if he had held the gun used to kill the deceased.

Kelly Weldon McNew testified he was in the decorating business and that he had employed the defendant to do painting for him. He had paid the defendant the balance of what was owed the defendant for work performed during the period from March through April. He testified he had personally paid the defendant on April 19, 1973, at the Quincy Street address.

Thereafter, both the State and the defense agreed that the defendant was in custody on the 19th of April, 1973.

Debra Sue Potter testified that on April 17, 1973, she was in the company of the defendant and that they had met Oscar Cates at a bar. Shortly after midnight, the three left the bar and went to defendant's apartment. Glenda Childers and Oscar

Cates were in the bedroom when she heard Glenda scream. The defendant and both Aunko brothers went into the room. She observed Perry Aunko strike Cates and then the defendant strike Perry Aunko, thereafter the gun discharging. She then observed Herschell Aunko drag Cates' body from the apartment into the hall. Shortly thereafter, she and the defendant left the apartment and went to her home located approximately one half block away. She denied ever seeing Oscar Cates flashing any money.

She had previously talked with a police detective regarding the case, but had not further contacted the police regarding her testimony following her initial interview.

The defense then rested.

D. A. Roberts testified in rebuttal for the State. He testified that Debra Sue Potter had told him she had seen the gun in the hands of both the defendant and Perry Aunko the night of the killing.

Perry Aunko, the final witness, testified in rebuttal for the State that he did not strike Cates nor was he struck by the defendant.

Both sides then rested.

■ Defendant's first assignment of error asserts the trial court erred in overruling his motion for mistrial at the time the jury returned its verdict.

The record reveals tthat the jury began deliberation at 2:00 p. m. At 4:42 p. m. the jury requested the testimony of Glenda Childers and to be supplied with coffee. The court, in open court with all parties present, refused their request for Glenda Childers' testimony but granted their request for coffee. Thereafter, at 8:49 p. m., the jury inquired about having someone notify their families. Thereafter at 1:50 a. m. the jury advised that they had reached a verdict. The jury was brought into open court and with all parties present the following transpired:

"THE COURT: The verdict forms in this case appear to be proper and the verdict as executed reads as follows,

Quote .Verdict, Criminal, State of Oklahoma, Tulsa County, in District Court, the State of Oklahoma versus Sammy Van Woundenberg, Defendant, Number CRF–73–701. We, the jury drawn, impaneled and sworn in the above entitled cause, do, upon our oaths, find the Defendant guilty of the crime of murder as charged in the Information herein and fix his punishment at imprisonment at hard labor in the State penitentiary for life. Claude F. Nelson, Foreman, End Quote.

"Does either party wish the jury polled at this time?

"MR. PEASE: State would waive.

"MR. BRUNTON: If the Court please, we would like the jury polled.

"THE COURT: The Court will inquire of the individual members of the jury: Sally Martin, is this your verdict?

"JUROR MARTIN: Yes.

"THE COURT: David L. Purviance, is this your verdict?

"JUROR PURVIANCE: Yes.

"THE COURT: James M. Breeden, is this your verdict?

"JUROR BREEDEN: Yes.

"THE COURT: William F. Gaines, is this your verdict?

"(No reply from Juror Gaines).

"THE BAILIFF: Mr. Gaines?

"(No reply from Juror Gaines).

"THE BAILIFF: Is your verdict guilty?

"(No reply from Juror Gaines).

"THE BAILIFF: Mr. Gaines?

"(No reply from Juror Gaines).

"THE COURT: The Court will inquire again: William F. Gaines, is this your verdict?

"(No reply from Juror Gaines).

"THE COURT: May we have an audible response, sir? Did you hear the verdict form read by the Court, sir?

"(No reply from Juror Gaines).

"THE COURT: Mr. Gaines?

"JUROR GAINES: Sir?

"THE COURT: Did you hear the verdict form read by the Court, sir?

"JUROR GAINES: Yes, sir, but I'm upset. I can't help it.

"THE COURT: The Court, again, would inquire: Is this your verdict, sir?

"JUROR GAINES: I can't say. I'm upset.

"MR. BRUNTON: If the Court please, comes now the Defendant and moves for a mistrial at this time.

"MR. LANGLEY: Your Honor, I think it's a decision for the Court.

"THE COURT: The Court would inquire, sir, Mr. Gaines, in a question posed to you, sir, that the Court feels could be answered in the affirmative or the negative: Is this your verdict?

"JUROR GAINES: Your Honor, I just—I'm so upset I can't say.

"MR. BRUNTON: If the Court please, comes now the Defendant again and moves for a mistrial.

"MR. PEASE: At this time, comes now the State and requests further polling of the jury.

"MR. BRUNTON: I have no objections to a further polling of the jury but I still move for a mistrial; protect this juror's right to vote the way he wants to vote.

"THE COURT: The Court, at this time, would request that the jury retire for further consultation to determine whether or not the verdict heretofore read by the Court in Open Court is, in fact, a unanimous verdict in this case. The Court would excuse the jury at this time for further deliberation and/or consideration and request that the jury return in Open Court at such time as the verdict is, in fact, unanimous." (Tr. 559–562)

Thereafter the jury retired for further deliberation. At 4:10 a. m. the jury again notified the court that they had reached a verdict. The jury was returned to open court and brought forth a verdict of guilty and sentenced the defendant to life imprisonment. Upon polling the jury all concurred in the verdict. Defendant contends that a mistrial should have been declared when juror Gaines failed to respond to the court's questions in regard to his concurrence with the guilty verdict at the time the jury was first brought into court.

Title 22 O.S.1971, § 921, states:

"When a verdict is rendered, and before it is recorded, the jury may be polled on the requirement of either party, in which case they must be severally asked whether it is their verdict, *and if any one answer in the negative, the jury must be sent out for further deliberation.*" (Emphasis added)

It is therefore apparent that the trial court fully complied with the statute and no abuse of discretion is shown for the failure of the trial court to grant defendant's motion for mistrial when juror Gaines failed to respond to the court's polling of the jury.

■ Defendant, under this assignment of error, further asserts that his motion for mistrial should have been granted or at least a recess granted due to the length of time the jury had deliberated. We first observe that at no time did the jury ever request that they stop deliberating for the night, nor did they ever declare to the court that they were deadlocked. This Court has previously held that the length of time a jury is required to deliberate is within the sound discretion of the trial court, and the trial court's judgment is final, unless there is a clear abuse of discretion. See, *Higgins v. State,* Okl.Cr., 493 P.2d 1121 (1972) and *Reed v. State,* Okl.Cr., 335 P.2d 932 (1959). It is our opinion that the trial court did not abuse its discretion in denying defendant's motion for mistrial. We therefore find this assignment of error to be without merit.

■ Defendant's next assignment of error asserts that reversible error was com-

mitted when juror Gaines was questioned by the bailiff as to his verdict. Specifically, the defendant asserts that when the jury returned to open court with their first verdict the following communication by the bailiff to juror Gaines was reversible error:

"THE COURT: William F. Gaines, is this your verdict?

"(No reply from Juror Gaines).

"THE BAILIFF: Mr. Gaines?

"(No reply from Juror Gaines).

"THE BAILIFF: Is your verdict guilty?

"(No reply from Juror Gaines).

"THE BAILIFF: Mr. Gaines?

"(No reply from Juror Gaines).

"THE COURT: The Court will inquire again: William F. Gaines, is this your verdict?

"(No reply from Juror Gaines)." (Tr. 560)

We first note that the bailiff posed the complained of question after an unsuccessful attempt by the trial judge to solicit a response from juror Gaines. Further, we note that the communication by the bailiff to juror Gaines was posed in open court in the presence of the defendant, the defense attorney, the court, the District Attorney and all the jurors. After a careful review of the entire record, this Court is convinced that on the face of the record no prejudice to the defendant occurred due to the bailiff's communication to juror Gaines. We therefore find that if any error occurred it was harmless. See, *Wilson v. State,* Okl.Cr., 534 P.2d 1325 (1975).

 Defendant, pro se, further contends that he was convicted solely upon uncorroborated testimony of accomplices. This Court has consistently held that where the sufficiency of the evidence to corroborate an accomplice is challenged this Court will take the strongest view of the corroborat-

ing testimony that such testimony will warrant, and, if we can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, this Court will uphold the verdict. See, *Sanders v. State,* Okl.Cr., 341 P.2d 643 (1959) and *Sizemore v. State,* Okl.Cr., 507 P.2d 1330 (1973).

In the instant case it is clear, assuming that the State's witnesses alleged by defendant to have been accomplices were in fact accomplices, that the corroborative evidence presented did tend in some degree to connect the defendant with the commission of the offense charged. We therefore find this assignment of error to be without merit.

 Defendant's final pro se assignment of error asserts he was denied a fair trial by reason of newspaper publicity concerning his trial. We first note that there is absolutely no evidence in the record to indicate that any of the jurors had read any of those articles or were influenced thereby. See, *Tucker v. State,* Okl.Cr., 482 P.2d 939 (1971). Further, the burden of proving that a juror has read news articles concerning a defendant on trial is placed on the defendant. See, *Wilson v. State,* Okl.Cr., 458 P.2d 315 (1969), and *Welch v. United States,* 371 F.2d 287 (10th Cir. 1966).

In the instant case the defendant has failed to meet this burden of proof and this Court will not presume that the jurors were exposed to the publicity and prejudiced thereby. We therefore find this assignment of error to be without merit.

For the foregoing reasons it is our opinion that the judgment and sentence appealed from should be, and the same is, hereby, *affirmed.*

BLISS, J., concurs.

BRETT, P. J., concurs in results.