Daniel Gene **LILES,** Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–83–746.

Court of Criminal Appeals of Oklahoma.

June 20, 1985.

James T. Rowan, Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Daniel Gene Liles was convicted by a jury of Murder in the First Degree and sentenced to life imprisonment.

Appellant, his brother, and appellant's girl friend came to Oklahoma City looking for work. His girl friend, Gail Connors, went to work in a club where she met the decedent, Joe Yarbrough. Appellant's brother, Mark Liles, made a statement to the police investigating the homicide. Mark had asked Gail to lure decedent to the motel room where the three were staying so he could hit Yarbrough and take his money. Mark told the police that his brother knew nothing of the plan but that Daniel happened to be in the motel room, standing behind the door, when decedent walked through the door. Mark was in the restroom, but came out when Yarbrough entered the room. Mark said Yarbrough pulled a knife when he saw appellant behind the door. Mark said he came from the bathroom and told Daniel to grab and hold decedent while he stabbed him. Appellant complied with his request. The two proceeded to take the keys and wallet of Yarbrough who was fatally wounded, and drove his automobile back to the decedent's motorcycle shop. They burglarized the

shop and exchanged his automobile for his van.

The two returned to their motel room and stuffed Yarbrough's body in a trunk and disposed of it by the South Canadian River in Oklahoma City. Later that day, August 27, 1982, the two were seen in Yarbrough's van by his best friend. This friend succeeded in stopping them and in summoning the police who arrested the two Liles. Gail Connors had left Oklahoma City earlier that morning, but was extradited and testified at the joint trial of appellant and his brother.

Both appellant and Mark made statements to the police on August 29, 1982. Their statements essentially coincided except for Mark's claim that the decedent had pulled a knife in the motel room.

■ Appellant now claims that he was unfairly prejudiced by being jointly tried with Mark, and that the trial court erred in not granting his motion for a severance. As appellant acknowledges, the decision to sever the trial of codefendant's lies within the trial court's discretion. Review is for abuse of that discretion. *E.g., Clark v. State,* 558 P.2d 674 (Okl.Cr.1977).

Appellant claims he was prejudiced by being tried with his brother because the statement Mark made to the police which implicated appellant was introduced, but appellant could not cross-examine Mark because he did not take the witness stand. Principally, however, appellant felt constrained by brotherly love from testifying and destroying Mark's weak self-defense theory.

■ When codefendant's statements are antagonistic, *Francis v. State,* 555 P.2d 88 (Okl.Cr.1976), or when a codefendant has not been linked to the crime by evidence independent of the other defendant's statement, *Frye v. State,* 606 P.2d 599 (Okl. Cr.1980), severance of trials may be required to prevent prejudice. In this case, however, the codefendants each made statements to the police which were not antagonistic to each other. They did not present any real conflicts. Mark's state-

ment tended to support appellant's who claimed he acted only because of surprise and confusion during the incident. *See Stiner v. State,* 539 P.2d 750 (Okl.Cr.1975). And appellant's principal concern, that of harming his brother's defense, against whom the State sought the death penalty, would not necessarily be relieved by separate trials. Thus, appellant has failed to demonstrate prejudice by the joint trials and we cannot say that the trial court misapplied its judgment in denying his motion for severance on this ground.

Appellant further complains that the joint trial denied him his right to confront this witness against him, his brother, and violated the principles established in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Supreme Court held in *Bruton* that a defendant's rights under the Confrontation Clause of the Sixth Amendment were violated when the confession of a codefendant was introduced at their joint trial, but who did not take the witness stand, and which statement implicated defendant who maintained his own innocence. But in *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), the Court held that this rule does not apply when codefendants give "interlocking confessions." The Court noted that when a defendant has admitted his own guilt, the incriminating statements of a codefendant will seldom if ever have the devastating effects referred to in *Bruton.* The right of confrontation has "far less practical value to a defendant who has confessed to the crime than to one who has consistently maintained his innocence." 442 U.S. at 73, 99 S.Ct. at 2139, 60 L.Ed.2d at 723.

■ Appellant and his brother each gave statements which supported the other's. Because of the interlocking nature of the confessions, the special precautions established in *Bruton* were not required. Appellant has not demonstrated prejudice by the trial court's refusal to sever the codefendants' trial.

Appellant's final assignment is that the evidence did not support a first degree

murder conviction for felony murder because there was insufficient evidence that appellant intended to rob the decedent at the time he helped his brother kill Yarbrough.

The statements of appellant and of his brother introduced at trial were that appellant knew nothing of the robbery plan. But there was a great deal of circumstantial evidence from which the jury could infer otherwise. A portion of that evidence was that appellant was in the motel room with his brother, standing behind the entry door, when the decedent entered, where he had been invited, at a predetermined time. The manager of the club where Gail was working testified she saw Gail leave the club the morning of the killing with Yarbrough, and that she stopped by herself to talk to two men in a black pickup with a West Virginia license plate, like the one owned by appellant. Appellant admitted he robbed Yarbrough, burglarized his shop, and helped to dispose of his body. He was captured in the decedent's van as he and his brother tried to leave town.

We have consistently held that when there is evidence from which the jury could conclude that the accused is guilty as charged, this Court will not disturb that finding though there are sharp conflicts in the evidence. *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980). A prima facie case of felony-murder was established. *Jetton v. State*, 632 P.2d 432 (Okl.Cr.1981). There is no error in this regard.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

PARKS, P.J., and BRETT, J., CONCUR.