Mark Roy LILES, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–427.

Court of Criminal Appeals of Oklahoma.

June 20, 1985.

Rehearing Denied July 16, 1985.

As Corrected Sept. 13, 1985.

1026

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Mark Roy Liles was convicted of Murder in the First Degree in Oklahoma County District Court. Punishment was assessed as death by lethal injection.

On August 29, 1982, appellant told police officer Larry Koonce that he killed Joe Yarbrough on August 27, 1982, as part of a robbery plot. Appellant had come to Oklahoma City from West Virginia with his brother Daniel Liles, and Daniel's girlfriend, Gail Conner. Mark had asked Gail to bring Yarbrough to the motel room so he could knock him in the head and rob him. Gail had met Yarbrough at a club where she worked for two days and told Mark about the roll of bills he carried. At the appointed time, she brought him to the motel room. As they walked in, Daniel stood behind the entry door and Mark came out of the restroom. According to appellant's statement, Yarbrough pulled a knife when he saw Daniel. Daniel grabbed Yarbrough from behind as he was requested to do by Mark. Mark then bounded for Yarbrough and stabbed him seven times in the chest with a 1953 Italian Stiletto switchblade. Yarbrough was fatally wounded and was left bleeding to death in the motel room while the two Liles, who had taken decedent's wallet and keys, went to burglarize Yarbrough's motorcycle shop. At the shop, the Liles traded decedent's car for his van, and also took jewelry, coins,

T-shirts and two guns. Upon returning to their motel room, they stuffed Yarbrough's body into a footlocker and dumped it by the South Canadian River. Gail Conner was taken to the interstate highway and she left Oklahoma.

Later the same day, Yarbrough's best friend, Dennis Russell, saw the Liles in the van, and was finally able to stop them after a chase by colliding his vehicle into theirs. Two days later while in jail, appellant requested to speak with the police and told Detective Koonce the above facts, and stated, as his brother Daniel also later stated, that his brother knew nothing of the robbery plot prior to Yarbrough's arrival at their motel room. Daniel's statement differed in that he did not mention Yarbrough pulling a knife in the motel room.

Appellant and Daniel were tried together. Daniel received life imprisonment for his part and has appealed separately, Case No. F–83–746.

During the sentencing phase, the jury found the existence of two aggravating circumstances warranting the death penalty. These were, according to 21 O.S.1981, § 701.12: one, that the murder was especially heinous, atrocious, or cruel; and, two, the existence of a probability that the defendant would commit criminal acts of violence that could constitute a continuing threat to society. The jury added to their verdict the following statement:

> We the members of the jury, as a body, feel the crime committed against the victim to be cruel by the pitiless means in which his life was taken as evidenced by the number of wounds inflicted to his body and the subsequent pain which he suffered before death. We feel it is atrocious due to the serious physical abuse inflicted upon the victim.

Appellant makes a number of assignments of error regarding the sentencing proceedings. First, appellant claims that his statutory and his state and federal constitutional rights were violated by the State's failure to provide a complete notice

of evidence to be used in the sentencing phase of his trial to prove there existed a probability that he would commit acts of violence that would constitute a continuing threat to society. We note that trial counsel failed to object at trial to the introduction of the evidence of which he now complains. Appellant urges that his counsel's failure to object at trial should not be considered a waiver of this error because it was due to the surprise this error created.

■ Section 701.10, 21 O.S.1981, provides that, "Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." In *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982) (remanded on other grounds), we recognized that due process requires the defendant be notified of what the State intends to prove at trial.

Prior to trial, the State filed written notice that it would offer evidence to prove a prior arrest and conviction for possession of a sawed-off shotgun in Brookshire, Texas. At trial, the arresting officer testified of the arrest and the circumstances surrounding the incident. He testified that prior to arrest he had watched appellant for approximately five hours because of a tip from an informant who claimed to have overheard appellant plan a robbery. A felony charge was reduced to a misdemeanor due to a procedural error and appellant pled guilty to the charge. We find the notice he received was adequate to apprise him of this evidence.

Other evidence introduced at appellant's trial of which he now complains were statements he made to Detective Koonce which were not made a part of his written statement. These statements concerned such matters as being put out of the Marine Corps, being previously involved in prostitution and narcotics related activities, and involvement in fights. His statement to Detective Koonce that he had also done things he would never divulge to anyone was also related to the jury. Detective Koonce was endorsed as a witness throughout the course of the proceedings against appellant. He testified at the preliminary hearing, first stage of jury trial, and then at the second stage of trial. Appellant's attorney had ample opportunity to cross-examine this witness regarding appellant's statements to him. He volunteered in his testimony at preliminary hearing that he and appellant had discussed a number of things, including being "kicked out" of the Marines. However, defense counsel cut off his statements and continued cross-examination on other matters.

■ Admissions of a defendant regarding unrelated criminal activity is relevant and admissible in the punishment stage of a capital case. *Johnson v. State*, supra. The danger of surprise to appellant was nearly nonexistent under the circumstances, and any error in introduction was waived by his failure to object. *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983).

Appellant complains there was insufficient evidence to support the jury's finding beyond a reasonable doubt the existence of the aggravating circumstance that the appellant would commit criminal acts of violence that would constitute a continuing threat to society. Section 701.13(C)(2), Title 21 O.S.1981, directs that we review the evidence in a capital case to consider whether it supports the judge or jury's finding of an aggravating circumstance.

The test on appeal for the sufficiency of evidence is whether a prima facie case has been established. *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980). If that test is satisfied, then the jury must resolve the questions of fact. *Id.*

■ The nature and circumstances of the killing itself may provide probative evidence of future acts of violence. *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984); *Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983), remanded on other grounds, ── U.S. ──, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984) 697 P.2d 165 (1985); *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983), remanded on other grounds, ── U.S. ──, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984) 56 O.B.A.J. 1152 (1985); *Ake v. State*, 663 P.2d 1 (Okl.Cr.1983), reversed on other grounds ── U.S. ──, 105

S.Ct. 1087, 84 L.Ed.2d 53 (1985). In each of these cases we found that the calloused nature of the defendant's acts supported the jury's finding of this aggravating circumstance. In the present case, appellant persuaded Conner to lure decedent to their motel room where he lay in wait to attack his unsuspecting victim. By his own admission, he brutally assailed Yarbrough, engaging his brother's help to render their victim defenseless. The calculated and cold bloodedness of the attack certainly reflects a calloused nature.

■ Other evidence which supported the jury's finding of the potential future violence included such things as: 1) appellant's prior conviction for possession of a sawed-off shotgun; 2) his possession on arrest of two guns he had stolen from decedent's shop; 3) an apparent attempt to locate and use these weapons when being stopped in the van by Russell; and, 4) his previous dangerous conduct as he reported it to Detective Koonce. We find the evidence amply supports the jury's finding of this aggravating circumstance.

■ Appellant now claims that the jury should have had an instruction specifically defining the elements of the aggravating circumstance that there existed the probability that the appellant would commit acts of violence which would constitute a continuing threat to society. We have previously addressed this question, *Chaney v. State*, 612 P.2d 269, 279 (Okl.Cr.1980), and reaffirm our position that this aggravating circumstance is specific, not vague, and is readily understandable.[1] Having failed to request such an instruction at trial, appellant has waived this assignment of error. *Parks v. State*, 651 P.2d 686 (Okl.Cr.1982).

■ Next appellant challenges the constitutionality of the aggravating circumstance of "probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to so-

ciety," claiming it allows a jury unlimited discretion in meting out the death penalty.

In *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), when the particular aggravating circumstance appellant now challenges was interpreted to allow a defendant to bring to the jury's attention whatever mitigating circumstances he may be able to show, the Court said the death penalty was not being imposed in an unguided manner. 428 U.S. at 273–74, 96 S.Ct. at 2957, 49 L.Ed.2d at 939. In fact, by directing the jury to weigh mitigating circumstances against this aggravating circumstance, it "guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death." *Id.*

Under our statutory scheme, the jury must find that the aggravating circumstances outweigh the mitigating circumstances before it is authorized to consider the death penalty. 21 O.S.1981, § 701.11. A defendant may offer "any relevant evidence, within the limitations of the rules of evidence, bearing on his character, prior record or the circumstances of the offense." *Chaney v. State*, 612 P.2d 269, 279–80 (Okl.Cr.1980) (construing 21 O.S. 1981, § 701.10). The trial judge herein instructed the jury of an exhaustive list of mitigating circumstances to consider, and advised them they could consider any other circumstances as well.

We hold that the jury received sufficient guidance to prevent an arbitrary or discriminatory application of the death sentence. *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982) (remanded on other grounds).

Appellant's next two assignments of error regard the second aggravating circumstance the jury found, that the murder was "especially heinous, atrocious, or cruel." 21 O.S.1981, § 701.12(4). First, he claims the evidence was not sufficient to support the jury's conclusion. And second, he claims that this Court's application of this

---

1. See, *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), wherein the Supreme

Court justified this aggravating circumstance.

aggravating circumstance allows the death penalty to be assessed in an arbitrary and capricious manner.

 Appellant's assertion that the evidence did not support this circumstance is premised on his conclusion that there was insufficient torture involved for the killing to be set apart from other killings, relying on our opinion in *Odum v. State*, 651 P.2d 703 (Okl.Cr.1982). Appellant simply disagrees with the jury's finding as they noted it in their verdict. They specially found the murder to be pitiless because of the amount of suffering endured by the victim. The conclusion was supported by the testimony of the medical examiner.

*Odum* is distinguishable. It involved a victim hit once by a bullet who was rendered unconscious immediately and died soon thereafter. We reversed the jury's finding for lack of evidence of suffering and because the manner of killing itself did not warrant the finding. *Id.*

The jury in the present case was given a uniform instruction, OUJI–Cr. No. 436, defining these terms as we previously approved:

> 'heinous' means extremely wicked or shockingly vile; 'atrocious' means outrageously wicked and vile; 'cruel' means pitiless or utter indifference to, or enjoyment of, the sufferings of others.

*Eddings v. State*, 616 P.2d 1159 (Okl.Cr. 1980), remanded for resentencing, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), modified on other grounds, 688 P.2d 342 (1984). The jury's statement added to the verdict explicitly stated on what grounds they found this aggravating circumstance was present. We find sufficient evidence in the record to support their determination. *Renfro*, supra.

Appellant's contention that this aggravating circumstance that a murder is "especially heinous, atrocious or cruel" allows arbitrary and capricious imposition of the death penalty is based on his assertion that this Court has allowed overbroad applica-tion in violation of *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). He points out that we have upheld the death penalty on this circumstance where torture like conduct has been involved, and in other cases where it was not involved.

 Our recent opinion in *Cartwright v. State*, 695 P.2d 548 (Okl.Cr.1985), explains that the statute is written in the disjunctive, and torture is not the only factor justifying a finding that a murder is especially, heinous, atrocious or cruel. Based upon the physical abuse the victim suffered, the jury found the crime atrocious. The jury also found it was cruel based upon the pitiless infliction of the wounds and the consequent suffering endured. See our opinion in *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984), where we explained that this circumstance includes consideration of manner of killing as well as the killer's attitude to determine whether it was atrocious or cold and pitiless as here. The evidence supported the jury's findings and their decision was not the result of unguided capriciousness.[2]

 As appellant's seventh assignment of error, he contends the death penalty should not be allowed except for an intended killing. Essentially, he is requesting this Court to abolish the death penalty for felony murder. We find appellant's argument nonpersuasive and he provides no pertinent authority for this action. *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), forbid imposition of the death penalty against certain nontriggermen, but it otherwise leaves intact the policy allowing the death sentence for those convicted of felony murder. While a Michigan appellate court dismantled Michigan's felony-murder doctrine in *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980), their opinion is neither controlling nor persuasive to this Court. Their felony murder rule was not statutory

---

**2.** As we noted in *Cartwright*, supra, at n. 6, appellant cannot complain of our arbitrary treatment of other appellants except to the ex-tent his sentence is excessive or disproportionate to the penalty imposed in similar cases. 21 O.S.1981, § 701.13(C)(3).

as ours is and that court recognized that malice may be inferred when one intentionally sets in motion a force likely to kill or cause great bodily harm. See, *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985), where we discussed and rejected appellant's requested rule.

■ After the jury had deliberated for slightly less than three hours following the punishment stage of trial, appellant's counsel requested the court to act as authorized by 21 O.S.1981, § 701.11, and take the case from the jury and impose a sentence of imprisonment for life. This section directs the trial judge to do so if the jury cannot agree as to punishment within a reasonable time. After counsel's request, the trial judge called the jury to the courtroom. The foreman advised that a verdict had not been reached, but that further deliberations could result in a verdict. After eating supper, the jury resumed deliberations. Approximately an hour and a half later, appellant's counsel again requested the court to take the case from the jury. When the bailiff was sent to bring the jury to the courtroom, they announced that they were not quite ready to return. Thirty minutes later, the jury advised that they had reached a sentence of death by lethal injection.

We do not consider three hours, or even five hours an unreasonable length of time for the jury to make the decision they were asked to make.[3] They were asked to carefully consider detailed instructions as well as four days of evidence. The jury expressed to the judge at each opportunity the probability that they could reach a verdict.

We noted in *Van Woundenberg v. State,* 545 P.2d 1274 (Okl.Cr.1976), that the length of time a jury may deliberate is within the trial court's discretion. We held that there was no abuse of that discretion when the jury was allowed to deliberate nonstop until the early morning hour of 4:10 a.m., when they had neither requested a break

nor indicated a deadlock. Here too the jury indicated their ability to reach a decision and expressed a desire to do so. The trial judge's rulings were proper.

Appellant claims that he was denied due process and equal protection of the law because the trial court refused to grant his request, appellant being an indigent, for State funds to hire 1) a psychiatrist to evaluate his sanity at the time of the offense; 2) an expert who could testify regarding appellant's capacity for rehabilitation; and, 3) a sociologist who was expert on the death penalty who could advise the jury of the circumstances in which the death penalty were given and of the recidivism rate of those convicted of capital murder.

■ Under certain circumstances, the State may be obligated to provide an indigent defendant with access to competent psychiatric assistance in preparing his or her defense. *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (Feb. 26, 1985). To trigger this process, the defendant must demonstrate "to the trial judge that his sanity at the time of the offense is to be a significant factor at trial...." *Id.* at ——, 105 S.Ct. at 1092, 84 L.Ed.2d at 60.

■ We find that appellant herein failed to make such a demonstration. His competency to stand trial was evaluated and the examining psychiatrist reported:

[I]t is the opinion of our staff that [appellant] is able to fully comprehend the exact nature of the proceedings pending against him.... [I]t is the consensus of our staff that [appellant] is not in need of psychiatric/treatment ... [W]e could not agree that [appellant] could be considered to be a mentally ill person as defined under Section 3, Title 43A, Oklahoma Statutes. There has been no behavior displayed on the part of [appellant] to indicate to the staff that he would be considered to be dangerous to

---

**3.** Appellant's reliance on Judge Brett's specially concurring opinion in *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980), as to what constituted a "rea-

sonable time" is unwarranted since that was not the issue being addressed by him.

himself and/or others in society, at least not as a result of any overt psychotic symptoms elicited during his period of confinement in this hospital.

Two months later appellant filed a motion requesting funds to employ a psychiatrist or psychologist to determine whether he had the ability to distinguish right from wrong at the time of the offense and to determine mitigating circumstances, contemporaneously asserting that he was competent to assist in his defense. Appellant never plead or attempted to prove an insanity defense. In applying for the funds, appellant failed to show cause for doubting his sanity. Counsel on appeal suggests that the fact appellant was placed on psychotrophic drugs at the State mental hospital is sufficient to raise doubts as to his mental state. But we consider this circumstance inadequate to demonstrate that insanity would be a key factor to appellant's defense at trial, or that his mental condition was seriously in question.

The State did not rely on psychiatric evidence at trial. It did not make appellant's mental condition relevant.

This case is much different than that of *Ake*, supra, which involved a defendant diagnosed as psychotic and who advised the court that he would raise a defense of insanity at trial. In that case, the State presented psychiatric evidence against the defendant. We find that the trial court in the instant case did not err in denying appellant's motion for the requested funds.

Appellant asserts that the trial court erred in refusing to give an instruction of Manslaughter in the First Degree. The instruction requested is that the elements of first degree manslaughter include a homicide, "Perpetrated without a design to effect death, ... by means of a dangerous weapon." The instructions given were of first degree felony murder and of second degree felony murder.

 Considering appellant's confession which exposed the killing as part of a scheme to rob Yarbrough, and Conner's testimony corroborating his confession, we

hold the evidence did not warrant the instruction, and those given adequately apprised the jury of the applicable law. *Jetton v. State*, 632 P.2d 432 (Okl.Cr.1981). The instructions to be given are discretionary, with the trial court determining whether the evidence warrants instructions of a lesser included offense. There was no abuse herein. *Boling v. State*, 589 P.2d 1089 (Okl.Cr.1979).

Appellant contends he received ineffective assistance of counsel in the sentencing stage of trial. He makes clear initially that his claim is not that his counsel was generally ineffective, but names a number of actions and inactions by counsel he claims contributed to his receiving the death penalty.

 The test by which claims of ineffective assistance of counsel are judged includes two components:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Secondly, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. ——, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). This same test applies whether a case is a capital case or not, and there is a strong presumption assistance of counsel was adequate. See our order in *Coleman v. State*, 693 P.2d 4 (Okl.Cr.1984).

Appellant claims that counsel failed to request severance of trial from codefendant Daniel Liles. We note that the record

reflects that the issue of severance was thoroughly litigated prior to trial. See our opinion in *Liles v. State*, 702 P.2d 1022, 56 O.B.A.J. —— (Okl.Cr.1985) (See this publication).

■ Appellant claims his trial counsel failed to make timely discovery motions, reasoning that filing them one week prior to trial was not sufficient. A review of the record reveals exhaustive motions for discovery were filed by appellant. This claim and his additional claim of ineffectiveness in failing to have a transcript made of the motion hearing lack substance because he does not demonstrate any harm which resulted from these inactions.

■ He assigns as error his trial counsel's failure to voir dire the veniremen more than he did, and his attorney's failure to exercise seven available peremptory challenges. We refuse to second guess counsel's trial strategy. An attorney's rapport with potential jurors and judgment in challenging jurors is a highly discretionary matter with trial counsel and should be reviewed with a presumption of effectiveness. *See Collis v. State*, 685 P.2d 975 (Okl.Cr.1984). Appellant has not overcome this presumption.

■ He claims his counsel failed to object to the admission of Daniel Liles' confession which implicated appellant. At trial, the statement was found to have been voluntary and due to the interlocking nature of their statements, we found no error in admitting them at their joint trial in *Liles*, supra. *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).

Appellant claims his counsel called Gail Conners to testify at trial and her testimony was damaging to him. We note her testimony was corroborated by appellant's confessions.

■ Appellant claims his counsel was in error in not requesting an instruction that Conner's testimony, who was an accomplice, must be corroborated. In fact, it was corroborated by the physical evidence and each Liles' confession.

■ He asserts it was error for his trial counsel to not have all reference to "drugs" excised from his confession prior to its submission to the jury. He believes that this improperly exposed to the jury "other crimes" evidence. In his confession, he told Detective Koonce that the "drugs" found within the van were his. But there is no indication in the statement that these were illicit drugs, possession of which would constitute a crime.

He asserts that his counsel improperly failed to challenge evidence introduced during the sentencing stage. We addressed this evidence in the first assignment and did not find reversible error.

■ He finally complains that his counsel was ineffective in failing to object to alleged instances of prosecutorial misconduct, yet he fails to point out any instances of this. In *Coleman, supra*, we refused to second guess trial strategy and to judge claims on the basis of hindsight. Again, we think appellant has fallen to such a temptation. Appellant is unable to show the adversarial process was undermined by his experienced defense counsel. This assignment is overruled.

■ Appellant contends that since his jury was composed only of those who qualified under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), he was denied a fair and impartial trial guaranteed by the Sixth Amendment. We have on a number of occasions considered the procedure of excusing veniremen who were irrevocably committed to vote against the death penalty, and have upheld it against a charge that it denied a fair trial. *E.g., Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980). *See also Wainwright v. Witt*, —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1983). We find no error.

■ Appellant complains of certain comments made by the prosecutor and of certain questions he asked of appellant's stepfather at trial. None of the comments or questions now complained of were ob-

jected to at trial nor was an admonishment for the jury to disregard them requested. *Burrows v. State*, 640 P.2d 533 (Okl.Cr. 1982). Therefore, review is for fundamental error.

Our review of the record reveals that none of the comments were so egregious as to constitute reversible error, especially in light of the overwhelming evidence of guilt including a confession. None were so prejudicial as to have effected the verdict. *Mahorney v. State*, 664 P.2d 1042 (Okl.Cr.1983); *Burrows*, supra.

Of particular concern to appellant was cross-examination of his stepfather by the prosecutor as to whether appellant had been in trouble for drinking and fighting in a town near to their home town. His stepfather reported that he had not been informed of any such trouble. The prosecutor did not offer any evidence to support the insinuation. The stepfather denied the existence of such problems with appellant. While it has been our position that the prosecutor should not ask questions to make insinuations or references not properly proven by the evidence, *Love v. State*, 360 P.2d 954 (Okl.Cr.1960), we do not believe appellant was significantly prejudiced in light of the tremendous evidence of guilt. *Mahorney*, supra.

This Court must determine certain matters according to 21 O.S.1981, § 701.-13(C) because this is a capital case. First, we must determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We find that it was not. The sentence is reasonably supported by the attending circumstances and by the law of this State.

Further, we must determine whether the evidence supports the aggravating circumstances as found by the jury. 21 O.S.1981, § 701.13(C)(2). We previously considered in this opinion whether the evidence supported the jury's finding of the existence of the two aggravating circumstances. We held that it did, and we reaffirm our view that the aggravating circumstances were not outweighed by those offered in mitigation.

Finally, under 21 O.S.1981, § 701.13(C)(3), we must consider whether appellant's sentence is excessive or disproportionate to the penalty imposed in similar cases. Therefore, we have compared it in relation to other cases in which the homicide was connected to theft type offenses, and find it not to be excessive or disproportionate. We refuse to compare undecided cases as requested to do by appellant, nor is comparison to be limited to cases in which the jury declined to recommend the death penalty. The cases considered include: *Brogie v. State*, 695 P.2d 538 (Okl. Cr.1985); *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984); *Coleman v. State*, 670 P.2d 596 (Okl.Cr.1983); *Stafford v. State*, 669 P.2d 285, 286 (Okl.Cr.1983); *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983); *Johnson v. State*, 665 P.2d 815 (Okl.Cr. 1983); *Glidewell v. State*, 663 P.2d 738 (Okl.Cr.1983); *Ake v. State*, 663 P.2d 1 (Okl.Cr.1983); *Hatch v. State*, 662 P.2d 1377 (Okl.Cr.1983); *Smith v. State*, 659 P.2d 330 (Okl.Cr.1983), vacated — U.S. ——, 104 S.Ct. 324, 78 L.Ed.2d 297; *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983); *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980); and, *Hays v. State*, 617 P.2d 223 (Okl.Cr. 1980).

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, J., specially concurs.

PARKS, P.J., dissents.

BRETT, Judge, specially concurring:

Reversal of this case on the basis of the ninth assignment of error would represent dramatic extension of *Ake v. Oklahoma*, — U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In the case at bar the defendant made a significantly *lesser* "preliminary showing that his sanity at the time of the offense is likely to be a significant factor at

trial" than did Ake. *See id.* at ——, 105 S.Ct. at 1092. Justice Rehnquist suggested in his dissent to *Ake,* "Before holding that the State is obligated to furnish the services of a psychiatric witness to an indigent defendant who reasonably contests his sanity at the time of the crime, I would require a considerably greater showing than [that which Ake has made]." *Id.* at ——, 105 S.Ct. at 1101. I would apply the same rule to this case.

*Ake* should be considered an absolute minimum for the showing that defendant's sanity at the time of the offense is likely to be a significant factor at trial. Rehnquist wrote that the facts in *Ake* did not justify the establishment of such a principle. For this Court to follow *Ake* on a much weaker set of facts is uncalled for. *Ake,* as Judge Bussey correctly notes in his opinion, involved a defendant diagnosed as psychotic, who advised the court that he would raise a defense of insanity at trial. In that case, the State presented psychiatric evidence against the defendant. Furthermore, *Ake* was diagnosed incompetent to stand trial. In contrast, the defendant here made no request for an insanity instruction and placed no reliance on an insanity defense. The findings of the examining psychiatrist left no doubt that the defendant was competent to stand trial, and clearly stated that the defendant exhibited no mental illness. Additionally the State did not rely on psychiatric evidence at trial or during sentencing.

*Ake* reasoned that "the risk of error from denial of such assistance, as well as its probable value, are most predictably at their height when the defendant's mental condition is seriously in question." *Id.* at ——, 105 S.Ct. at 1097. Here the defendant failed to raise *any* question as to his sanity.

The dissenting opinion by Judge Parks suggests that a slight showing of anxieties and emotional problems is sufficient to satisfy the test established in *Ake* that the defendant make "a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at the tri-

al." *Id.* at ——, 105 S.Ct. at 1092. The psychiatrists prescribed Thorazine and recommended that the defendant be provided with follow-up care. Notwithstanding the administration of 150 mg. of Thorazine, these facts do not indicate anything more than the presence of anxieties and emotional problems, where the report clearly stated that the defendant exhibited no overt psychotic symptoms or behavior. To hold that every defendant who could make some showing of anxiety and emotional problems is entitled to psychiatric assistance would be equivalent to holding that *every* defendant is entitled to such assistance. I believe such an extension is clearly beyond that contemplated by the Supreme Court.

The dissent also reads a great deal of doubt into the examination report. Not only are there no doubts apparent from the report, but even if the doubts which the dissent lists were present the defendant did not make an adequate preliminary showing as required by *Ake. Ake* requires the defendant to take the initiative; a defendant who does not even intend to rely on an insanity defense cannot be said to have sufficiently shown the trial judge that his sanity will be an issue at trial.

The mere request of psychiatric assistance is also not sufficient to meet the test established by *Ake.* Otherwise, such assistance would be available merely on request without necessity to show cause as required by the Supreme Court.

For the above reasons, I concur in this decision.

PARKS, Presiding Judge, dissenting:

In *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court established landmark guidelines to be used by trial courts in determining when an indigent criminal defendant must be given access to a competent independent psychiatrist. Our task is to evaluate and apply those guidelines to the facts in this case.

The Court, in *Ake,* identified three factors as being relevant to determining

the need for an appointed psychiatrist: First, the private interest of the defendant; second, the governmental interest of the charging jurisdiction; and third, the probable value of the procedural safeguard and the risk of error if the safeguard is not provided. In evaluating the three factors, the Court said: "The private interest in the accuracy of a criminal proceeding ... is almost uniquely compelling .... the governmental interest in denying ... the assistance of a psychiatrist is not substantial ...." and "considering the pivotal role that psychiatry has come to play in criminal proceedings .... when the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be critical to the defendant's ability to marshall his defense." *Id.* at ——, 105 S.Ct. at 1094–95.

Applying its constitutional analysis to the facts in *Ake*, the Court said: "We hold that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one." *Id.* at ——, 105 S.Ct. at 1092. This language, however, is intended simply as a statement of the Court's holding, as dictated by the facts in *Ake*. Since Ake had clearly demonstrated "that his sanity at the time of the offense [was] likely to be a significant factor at trial," a broader holding was not necessary. This language was not intended to establish a bright-line rule or to constitute a triggering mechanism, as the majority of this Court indicates, *supra* at ——.

The Court's analysis in *Ake* clearly demonstrates that the holding was not intended as a triggering mechanism. Discussing Ake's right to psychiatric assistance during the *sentencing stage* of his trial, the Court stated:

> Ake also was denied the means of presenting evidence to rebut the State's evidence of his future dangerousness

.... We have repeatedly recognized the defendant's compelling interest in fair adjudication at the sentencing phase of a capital case. The State, too, has a profound interest in assuring that its ultimate sanction is not erroneously imposed .... The variable on which we must focus is, therefore, the probable value that the assistance of a psychiatrist will have in this area, and the risk attendant on its absence.

> .... Without a psychiatrist's assistance, the defendant cannot offer a well-informed expert's opposing view, and thereby loses a significant opportunity to raise in the juror's minds questions about the State's proof of an aggravating factor. In such a circumstance, where the consequence of error is so great, the relevance of responsive psychiatric testimony so evident, and the burden on the State so slim, due process requires access to a psychiatric examination on relevant issues, to the testimony of the psychiatrist, and to assistance in preparation at the sentencing phase.

*Id.* at ——, 105 S.Ct. at 1097. Obviously, if a defendant is required in every case to make "a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial," he would frequently be "denied the means of presenting evidence to rebut the State's evidence of his future dangerousness."

Discussing the psychiatric requirement in the context of Ake's strong showing of need, the Court said: "The risk of error from denial of such assistance, as well as its probable value, are most predictably *at their height* when the defendant's mental condition is seriously in question." *Id.* at ——, 105 S.Ct. at 1097. (Emphasis added). Further, on the issue of the need to rebut the state's evidence of future dangerousness at the sentencing stage, the Court stated: "The foregoing discussion *compels* a similar conclusion in the context of a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future dangerousness." *Id.* at ——, 105 S.Ct. at 1097. (Emphasis added). Clearly, the Court is indicating that the

*Ake* situation represents an egregious example of the denial of assistance. Under such circumstances, the factors indicating a need for assistance are "at their height" and a denial "compels" a reversal. The language should not, however, be interpreted as an indication that a defendant should always be denied assistance in less compelling situations.

A proper interpretation of the Court's analysis seems to indicate that the probable value of expert assistance and the risk of error involved in a denial of assistance is the most important factor to consider. Therefore, as a general rule, when an indigent defendant is able to make a preliminary showing that expert testimony is likely to be a significant factor at either the guilt or sentencing stage of his trial, or when the State has made expert testimony relevant because of the crime charged, aggravating factors alleged or testimony presented, then the defendant is entitled to State provided access to competent independent expert assistance at trial. As the Court said: "[W]hen the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be critical to the defendant's ability to marshall his defense." *Id.* at ——, 105 S.Ct. at 1095.

In the present case, the appellant was able to make a preliminary showing that expert testimony was likely to be a significant factor at either the guilt or sentencing stage of his trial. First, he made a request for a court-appointed psychiatrist and other expert assistance. Such a request should put a trial court on notice that expert testimony might play a significant part at trial. Second, the trial court had previously complied with appellant's request and ordered a psychiatric examination on the question of his competency to stand trial. Third, the psychiatric report indicated that it was the "consensus" of the staff doctors that the appellant was not in need of psychiatric treatment and was competent to stand trial. Consensus is an ambiguous term. It may mean unanimity or it may mean majority. *Websters New Collegiate Dictionary*

(1979). Therefore, the trial court was aware that there might possibly be some disagreement among the doctors as to appellant's mental condition. Fourth, the psychiatric report indicated that during the period of the psychiatric examination, the appellant was being maintained on 150 milligrams of Thorazine per day. Thorazine is an extremely powerful psychotropic drug. Its most common use is for the management of manifestations of *psychotic disorders*. *See Physician's Desk Reference* (39th Ed. Barnhart 1985), at 1977. In a special warning box, the *Physician's Desk Reference* states that Thorazine "is not the first drug to be used in therapy for most patients with non-psychotic anxiety because certain risks associated with its use are not shared by common alternative treatments .... When used in the treatment of non-psychotic anxiety [it] should not be administered in doses of not more than 100 mg. per day ...." *Id.* Therefore, assuming that the State's doctors were following standard medical practice, the fact that appellant was being maintained on 150 milligrams of Thorazine per day strongly indicates that the doctors were concerned with "the management of manifestations of psychotic disorders." Fifth, the psychiatric report recommended that the appellant continue his Thorazine treatment "in order for him to retain his present degree of stability." The fact that Thorazine therapy was administered during the appellant's psychiatric examination and the recommendation for continuation belie the psychiatric report's assertion that the appellant was "not in need of psychiatric/treatment," and indicate that the doctors entertained serious concern about his mental stability. Sixth, the doctor's concern about appellant's mental condition was further illustrated by the fact that the psychiatric report suggested that appellant be referred "to a mental health clinic in his locale for follow-up care on an out-patient basis as might be indicated." Seventh, the psychiatric report stated: "There has been no behavior displayed on the part of [the appellant] to indicate to the staff that he would be con-

sidered to be dangerous to himself and/or others in society, at least not as a result of any overt psychotic symptoms elicited during his period of confinement in this hospital." Given the fact that the State was specifically alleging the aggravating factor of future dangerousness, this statement alone should be sufficient to alert a trial court to the fact that the appellant's state of mind was likely to be a significant factor at the sentencing stage of the trial. Finally, contrary to the majority's assertion, *supra* at 1033, the state raised the issue of the relevance of the appellant's state of mind by charging him with the aggravating factor of future dangerousness and introducing police and other testimony in an attempt to meet its burden of proof. The use of *psychiatric* testimony by the State to establish future dangerousness makes a defendant's need for expert assistance, in the Supreme Court's formulation, compelling. However, such testimony should not be the triggering factor. A rule making the appellant's right to assistance on this key issue depend on the prosecutor's discretion would be untenable. As the Supreme Court stated in *Ake:* "Without a psychiatrist's assistance the defendant cannot offer a well-informed expert's opposing view, and thereby loses a significant opportunity to raise in the juror's minds questions about the State's proof of an aggravating factor. In such a circumstance, where the consequence of error is so great, the relevance of responsive psychiatric testimony so evident, and the burden on the State so slim, due process requires access to a psychiatric examination on relevant issues, to the testimony of the psychiatrist, and to assistance in preparation at the sentencing stage." *Id.* at ——, 105 S.Ct. 1097. This rationale would seem to apply regardless of whether the State introduces psychiatric testimony.

In a case such as this, where the decision on punishment is difficult, where there is a substantial body of mitigating evidence, where the jury deliberates on the possible penalty for a considerable length of time, and where the trial judge states in his trial report that, "it was a close decision," and

that he was "surprised by the death sentence," the probable value of psychiatric assistance and the risk of error from its absence are manifest. On that basis, I would, therefore, reverse and remand this case for new trial. Accordingly, I respectfully dissent.