James H. HAMPTON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16305.

Court of Criminal Appeals of Oklahoma.

Sept. 29, 1972.

Rehearing Denied Oct. 9, 1972.

Red Ivy, Chickasha, for appellant.

Larry Derryberry, Atty. Gen., Sondra Leah Fogley, Asst. Atty. Gen., for appellee.

## DECISION AND OPINION

BRETT, Judge:

Appellant, James Henry Hampton, hereafter referred to as defendant, was convicted in the District Court of Oklahoma County, Oklahoma, in case number CRF–70–674, for the crime of second degree burglary and was sentenced to serve five (5) years imprisonment. From that conviction this appeal has been perfected. Judgment and sentence is affirmed.

Defendant was specifically charged with having broken into a certain pay telephone located in the "Gringo Club" in Oklahoma City, and with taking the money from the telephone. He was arrested on March 11, 1970 in the City of Bethany, Oklahoma, for the minor traffic offense of changing lanes without properly signalling.

The arresting officer informed the defendant of his violation and was checking his driver's license when a second officer approached the scene. At that moment, the defendant got out of his automobile and the arresting officer asked him to place his hands on the top of the car, which he did. However, the testimony re-

vealed that during the "frisk search" the officer observed the defendant "fiddling with his right pocket," with his hand in his right jacket pocket; so, the officer placed his hand in the pocket and removed an instrument which he recognized to be a "lock-picking device." Consequently, defendant's automobile was impounded and defendant was taken to the police station, where the traffic citation was executed by the officer. While he was at the police station, another lock-picking device was discovered, when he emptied his pockets. The Police Captain then executed an affidavit for issuance of a search warrant for the purpose of searching defendant's automobile. The search warrant was issued, and the results of the search of the automobile revealed certain burglary tools and other incriminating evidence, including the front to a pay telephone at the Gringo Club, which was subsequently identified by serial number by the Southwestern Bell Telephone Company authorities.

Defendant had a preliminary examination on May 1, 1970, when he was bound over to stand trial. Defendant filed a motion to remand the charge to the magistrate for further preliminary examination, for the purpose of examining one witness. His motion was sustained and on July 14, 1970, defendant examined the additional witness. But at that hearing, after the witness was examined, the examining magistrate refused to permit the defendant to recall the Bethany Police Captain for further examination. Defendant's trial was commenced on September 2, 1970. Judgment and sentence was imposed on September 18, 1970, after which this appeal was perfected.

Defendant's first proposition asserts that the court committed error when his motion to suppress was overruled. Defendant contends the arrest for the traffic violation and the search of his person, after being arrested for a minor traffic violation, was a subterfuge; that the arrest was made solely for the purpose of searching him; and therefore the subsequent search of the automobile with the aid of a search warrant was likewise illegal.

It is a familiar rule that when an arrest is made, for other than a minor traffic offense, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the arrestee might seek to use, to effect an escape. "[T]here is justification for a search of an arrestee's person and area within his immediate control; meaning the area from within which he might reach for a weapon or to destroy evidence." Fields v. State, Okl.Cr., 463 P.2d 1000, 1001 (1970). However, each case stands or falls on its own facts; and each arrest must be considered with the facts and circumstances surrounding it. "The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case." Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

There can be no doubt concerning the arresting officer's authority to make the arrest for the traffic violation of the State Statutes and the Ordinance of the City of Bethany. See: 47 O.S.1971, § 11-604, and the Code of Ordinances of the City of Bethany, Ordinance 40-26. We observe also, the record reflects that the officer's testimony was consistent throughout, that he arrested the defendant for the traffic violation; that he took the defendant to the police station; and that his duty consisted of the execution of the traffic citation. While the defendant was in the police station, Police Captain Sharp entered the room. The Captain requested the defendant to empty his pockets; and when he was in the process of doing so, another lock-picking device was discovered. At that moment, the Police Captain decided to ask for a search warrant to search the automobile.

Title 47, O.S.1971, § 16-106, provides in part:

"Whenever any person is halted by a police officer for any violation of this act .

and is not required to be taken before a magistrate as hereinbefore provided, the person shall, in the discretion of the officer, either be given a traffic citation as hereinafter provided, or be taken without unnecessary delay before the proper magistrate, as specified in section 16–110 in any of the following cases:

"1. When the person does not furnish satisfactory evidence of identity or when the officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court."

■ In the instant case, the arresting officer admitted at the preliminary examination that he had read a police bulletin on the defendant, but said that he did not recall what it provided, except with reference to the possibility that defendant might have a lock-picking device on his person. He testified at the trial that he did not know the defendant, and that he did not know that the defendant lived on 23rd Street in Bethany, Oklahoma. Nonetheless, considering the information made available to the arresting officer, prior to the time defendant was arrested, the officer was justified in using such precaution as he deemed necessary, while executing the arrest.

The officer testified at the trial, when the defendant got out of the vehicle he "asked him to turn around and put his hands on the car which he did. I searched him and his immediate surroundings and as I was searching him I noticed he was fiddling with his right pocket, with his hand in a sport coat pocket and I looked into the pocket and pulled out a picking device." On direct examination, the arresting officer identified the defendant as the man he arrested. Defendant was arrested, taken to the police station, and his car was taken to the police department, where it was impounded.

Captain Sharp testified that he knew the defendant, and that he had maintained some surveillance on the defendant at the place on 23rd Street where he lived and at the Arrow Motel. He related also that he had instructed his officers in the event the defendant violated any traffic laws that they were to bring the defendant to the police station.

■ As we view the evidence offered in this prosecution, the lock-picking device discovered in defendant's pocket was not illegally obtained, nor were defendant's rights violated when he was arrested. In Stevens v. State, Okl.Cr., 274 P.2d 402 (1954), a case in which the factual situation was very similar to the instant case, this Court stated:

"The officers would have a right, however, if, from the situation that would confront them it was deemed necessary in order to prevent the escape of the prisoner, or for their own protection, they might search the motorist and all the persons in the car; . . . ."

It was reasonable, therefore, to presume, when the defendant was "fiddling" in his right pocket, that he might have been seeking a weapon with which to effect his escape from the arrest. At that point the arresting officer was acting within his authority when he went beyond a "frisk search" and reached into the defendant's pocket in search of a weapon.

■ As the Attorney General points out in his brief, reciting from Taglavore v. United States, (9th Cir.) 291 F.2d 262 (1961), a case also cited by defendant:

" . . . Incident to a valid arrest the person arrested may be searched without warrant. Thus where one has been legally arrested for the commission of a crime his person and, in most cases, his immediate surroundings at the time of arrest may be properly searched. *The main purpose of this exception is* to facilitate discovery of various elements and evidence of the crime for which the accused is being arrested, and *also to remove weapons or other instrumentalities which might be used to resist the officers* or for escape or similar purposes. *If a search happens to uncover evidence*

*of crimes other than the one for which the accused has been arrested, this evidence may also be used against him in prosecutions for the other crimes so discovered."* (Emphasis Added)

This Court held in Wafers v. State, Okl. Cr., 444 P.2d 825 (1968):

"An officer making an arrest has authority to search the person and the immediate place of arrest and to take from the person arrested any dangerous weapons or anything else necessary to protect the public, the officer, prevent escape or for use as clues or evidence at trial."

We are, therefore, of the opinion that the arrest of defendant was legal; that the search of his person, under the facts of this case, was legal, and that none of defendant's constitutional rights were thereby violated. We therefore deny defendant's first proposition.

■■ Defendant next asserts that error was committed when the trial court denied his motion for new trial premised upon the loss of the lock-picking device, state's exhibit number one. We find this proposition to be without merit. The exhibit was available for the jury to consider at the trial; and, whether or not the exhibit is necessary for the appeal is a matter for this Court to determine. In the instant matter, we conclude that the "lock-picking device" is not essential to the consideration of this appeal. The citation quoted in defendant's brief refers to the loss of the "record in the case"; but in this appeal the record is before the Court. See: Cotter v. State, 74 Okl.Cr. 304, 125 P.2d 777; and Riddle v. State, Okl.Cr., 374 P.2d 634 (1962).

■■ Defendant's third proposition complains that the defendant's second application to remand the case to the examining magistrate for further preliminary examination should have been allowed. This proposition is without merit in that defendant had a preliminary examination on May 1, 1970, at which Captain J. D. Sharp testified and was cross-examined. Later, defendant's first application for the matter to be remanded for further preliminary examination was allowed and Mr. Jim Hervey did testify, as requested in defendant's application. But, when defendant insisted that Captain Sharp be allowed to testify again with certain documents requested by the defendant, the examining magistrate refused defendant's request. Notwithstanding the fact that defendant issued a subpoena for Captain Sharp's appearance at the second hearing, the examining magistrate did not abuse his discretion when he refused to permit the witness to testify the second time. It is true that the preliminary examination serves as a means of discovery for the defendant; but by the same token, the preliminary examination is not intended to be a substitute for a trial. This Court held in the matter of In re Bishop, Okl.Cr., 443 P.2d 768 (1968):

"A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial; its function being limited to a determination of whether probable cause exists to hold the accused for trial."

The state properly identified, by serial number, the front of the telephone found in defendant's automobile, as being the one taken off the pay telephone at the Gringo Club. This identification was made by the Southwestern Bell Telephone Company employees; and the jury was sufficiently satisfied that the tools introduced into evidence were for the purpose the state contended. Through the testimony of the Agent of the Oklahoma Bureau of Investigation, the tools were sufficiently identified as being the tools used to remove the pay telephone frontpiece.

■ The defendant offered no evidence or testimony, but instead entered a demurrer to the evidence and renewed his motion to suppress, both of which were denied. We conclude after considering the records before this Court that the defendant received a fair trial in accordance with

due process of law, and that this conviction in the District Court of Oklahoma County, Case No. CRF–70–674, should be affirmed.

It is so ordered.

BUSSEY, P. J., and SIMS, J., concur.