**Merle PERKINS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–83–213.**

Court of Criminal Appeals of Oklahoma.

Feb. 19, 1985.

Concurring Opinion Corrected
Mar. 15, 1985.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## MEMORANDUM OPINION

BUSSEY, Judge:

The appellant, Merle Perkins, hereinafter referred to as the defendant, was convicted of Second Degree Burglary, After Former Conviction of a Felony, in Bryan County District Court, Case No. CRF–81–163, was sentenced to ten (10) years' imprisonment, and he appeals.

Testimony revealed that at approximately 3:00 a.m. on January 20th, 1981, Cindy Spencer awoke at her Durant, Oklahoma, home, looked out a window and saw a light on inside her car parked in the carport and a person inside the vehicle. She called the police and later identified a wallet shown to her by Durant police officer James Elledge as belonging to her sister, Deborah. Deborah Spencer testified that the billfold was hers which she had left in Cindy's car three days prior to the incident.

The preliminary hearing testimony of Elledge, the first officer to arrive at the scene, was read into the trial record over defense counsel's objection. In the preliminary hearing, which occurred 10½ months before the trial, Elledge testified that in response to a radio dispatch he went to the Spencer residence and saw a subject, whom he positively identified as the defendant, run across the alley adjacent to Cindy Spencer's home and drop a purse and a welding glove by a tree.

Officer James Hill testified that Officer Elledge was on the scene when he arrived, that the defendant was standing near a tree and that a billfold was lying five to ten feet from the defendant.

Defendant denied being inside the Spencer vehicle and testified that he had car trouble and decided to walk down the alley toward his brother-in-law's house. When he saw the police coming, he hid behind a tree because he feared being arrested for public drunkenness. Perkins testified that the welding glove was his and that he did not notice the purse near him when he was hiding. He also admitted to prior convictions of Grand Larceny and Burglary.

## I

In his first assignment of error, the defendant argues that the trial court erred by admitting into evidence the preliminary hearing testimony of Officer Elledge because proof was insufficient that he was unavailable to testify in person.

A thorough discussion of this issue was set forth in *Smith v. State*, 546 P.2d 267 (Okl.Cr.1976), wherein we quoted from *Newton v. State*, 403 P.2d 913 (Okl.Cr. 1965), as follows:

[T]he introduction of the previous testimony is at the discretion of the trial judge but that the exercise of such discretion is limited by certain limitations including; that the testimony was taken down by a reporter in the presence of the defendant and his counsel, who cross-examined him; that the testimony was filed with the clerk; that a proper predicate is laid for the introduction of such testimony, by showing the exercise of due diligence in attempting to locate the missing witness; and, that *due diligence has been exercised in an effort to produce the witness*, by timely issuance and service of subpoena.

The State bears the burden of proving by a good faith effort that the witness was truly unavailable. *Dilworth v. State*, 611 P.2d 256 (Okl.Cr.1980), and cases cited therein. We are of the opinion that the State met its burden by producing fellow officer Bob Hendrix, who testified at an in-camera hearing that he had known Elledge for ten years, that he had cancer "very bad" and that in his opinion, when he saw Elledge 15 days before the trial date, he was bedfast and incapable of testifying in court. This Court rejects the defendant's argument that Officer Hendrix was incompetent to testify about Elledge's health and that medical testimony had to be produced before Elledge could be declared unavailable as a witness. See, *Lee*

*v. State,* 600 P.2d 344 at 347 (Okl.Cr.1979). A lay witness' testimony in the form of an opinion is admissible where it is rationally based on the perception of the witness. 12 O.S.1981, § 2701. Under these circumstances, Officer Hendrix' opinion was properly considered by the trial court.

■ We find that the trial court did not abuse its discretion in admitting the prior testimony, especially in light of a stipulation entered later on the day of the trial in which it was agreed that if Officer Hendrix were to be recalled he would testify that Elledge died at approximately 2:30 p.m. that afternoon. This assignment of error is without merit.

## II

In a closely related argument, the defendant next asserts that the trial court erred by refusing to allow him to object during the reading of the transcript of Elledge's testimony.[1] Defendant analogizes the use of Elledge's preliminary hearing testimony to the use of conditional examinations pursuant to 22 O.S.1981, §§ 761–771, particularly § 770, which reads in pertinent part: "... Upon reading *depositions* in evidence, the same objections may be taken to a question or answer contained therein as if the witness had been examined orally in court." (our emphasis). However, the use of depositions at trial differs from the use of preliminary hearing testimony because deposition proceedings do not require the presence of the State, whereas a preliminary hearing cannot proceed without the defendant being present and being allowed to cross-examine the witness. 22 O.S.1981, § 258. Defendant's analogy is misplaced.

1. Elledge's preliminary hearing testimony read at trial stated in pertinent part:
   Q. All right. I see it's [the purse and welding glove] in an envelope. Did you mark that with your initials or—
   A. Yes sir.
   Q. Is it sealed?
   A. Yes sir. Page 6.
   Q. What's in it?
   A. Purse and welding glove.
   Q. Why don't you open it up, please.

■ The issue whether defense counsel may object at trial to former testimony and if so, whether the scope of his objection is limited to the substance of the testimony rather than its form does not appear to have ever been directly addressed by this Court. While some jurisdictions hold that testimony given by a witness at a prior proceeding is open to all proper objections which would exclude the testimony, we align ourselves with the view that if allegedly improper questions are asked at the preliminary hearing level and no objections are made at that time, such objections are waived at trial. See, *Leach v. Nelson,* 50 N.D. 538, 196 N.W. 755 (1924); *Smith v. Cincinnati Traction Co.,* 24 Ohio N.P., N.S. 565 (1924); but cf. *Louisville & N.R. Co. v. Scott,* 232 Ala. 284, 167 So. 572 (1936); *Arnold v. Genzberger,* 96 Mont. 358, 31 P.2d 296 (1934). To hold otherwise would frustrate the intent of 12 O.S.1981, § 2804(B)(1), which states in pertinent part that, "testimony given as a witness at another hearing of the same or another proceeding is not excluded by the hearsay rule if the declarant is unavailable as a witness." This assignment of error is without merit.

## III

In his final assignment of error, the defendant argues that the trial court erred by failing to excuse juror Nancy Chappell who stated that she would vote to find the defendant guilty if she had a reasonable doubt about his guilt. The following transpired during defense counsel's voir dire of prospective jurors when the jurors were questioned about how they would vote if

A. Alright.
Q. It's still got money in it, doesn't it?
   MR. BERRY: I object to that, your Honor, being admitted at this trial. It's a leading question. And clearly improper.
   BY THE COURT: The exhibit has been received and it is being read in its entirety and the Court won't entertain any objection during the reading of the transcript. Your objection will be over-ruled. (Tr. 134).

they had a reasonable doubt about the defendant's guilt:

MR. BASKIN: Innocent.

MR. BERRY: How would you vote? (Talking to a juror)

JUROR: Innocent.

MR. BERRY: Mrs. Chappell, how would you vote?

MRS. CHAPPELL: *I think not guilty.* (Our emphasis)

MR. BERRY: If you had a reasonable doubt, you think you would vote not guilty?

MRS. CHAPPELL: I think I would want to hear the evidence.

MR. BERRY: The question is though, ma'am, that once you have heard the evidence and you are back there in the jury room, exercising your duty as an American citizen and the—and judging this other citizen who is charged with this crime, and you had a doubt and the ballot was being cast, how would you vote?

MR. GABBARD: I will object to that, your Honor, as not being the standard.

BY THE COURT: Sustained.

MR. BERRY: If you had a reasonable doubt, how would you vote?

MRS. CHAPPELL: Guilty.

MR. BERRY: How would you vote, ma'am, if you had a reasonable doubt, and the jury was being polled for their vote on the verdict, how would you vote if you had a reasonable doubt?

MRS. TURNER: If I had a doubt, I couldn't prove him guilty, if I had a doubt. I would need to know by the evidence. (Tr. 48–49).

■ After reviewing all of the jurors' voir dire answers in context, it is evident that she initially answered that she would find the defendant not guilty and that her subsequent answer of "guilty" was either because she was confused about the question or simply misstated her position. Clearly, defense counsel did not grasp the misstatement because he proceeded to question another potential juror. This Court has stated on numerous occasions that it is the duty of counsel to examine the jurors on voir dire and discover by proper investigation the facts affecting their qualifications and then to reasonably raise any objection that might exist as to any member of the panel. If he fails to do so, he waives any objection on that point. *Roberson v. State*, 456 P.2d 595 (Okl.Cr.1968). Moreover, in subsequent voir dire examination, Mrs. Chappell stated that she could enforce the law just as vigorously by voting not guilty and that she knew the government had to prove that the defendant was guilty. We conclude that she understood her role as a juror and merely misstated herself on one isolated occasion.

■ As a sub-proposition, the defendant contends his defense counsel rendered ineffective assistance of counsel by failing to request that Mrs. Chappell be removed for cause. This Court will not second-guess viable defense tactics. Defense counsel had already elicited from Mrs. Chappell that she would find the defendant not guilty if she had a reasonable doubt. Defendant's citing this one instance of allegedly ineffective assistance of counsel does not begin to fall short of the "reasonably competent assistance of counsel" standard adopted in *Johnson v. State*, 620 P.2d 1311 (Okl.Cr.1980). This assignment of error is without merit.

Accordingly, the judgment and sentence appealed from is hereby **AFFIRMED.**

BRETT, J., concurs.

PARKS, P.J., Specially Concurs.

PARKS, Presiding Judge, specially concurring:

While I agree with the outcome of this case, I want to comment on the use of transcripts from preliminary hearings at trial when the witness is no longer available to testify.

In the case at bar, Appellant argued that the trial court erred in not allowing him to object during the reading of Officer Elledge's preliminary hearing testimony as it was presented to the jury during trial. At one point, the defense attorney attempted to enter an objection to a question, and the trial court said it would not entertain any objections during the reading of the transcript:[1]

> "MR. BERRY: I object to that, your Honor, being admitted at this trial. It's a leading question. And clearly improper.
>
> BY THE COURT: The exhibit has been received and it is being read in its entirely and *the Court won't entertain any objection during the reading of the transcript.* Your objection will be overruled." (Tr. p. 134) [Emphasis added].

The appellant analogizes the use of prior testimony to the use of depositions, provided for at 22 O.S.1981, § 761–771. When depositions are read into evidence "the same objection may be taken to a question or answer contained therein as if the witness had been examined orally in court." The state argues that otherwise valid testimony can be lost because an improper question cannot be rephrased. With a live witness, a leading question can be rephrased in such a way to get the testimony into court; but if there is a leading question in a transcript, there is no opportunity to cure it.

The dilemma as to objecting to former testimony being used at trial must be viewed in light of the circumstances surrounding the preliminary hearing. A preliminary hearing is a less searching exploration into the merits of a case than that of a trial. *Magill v. Miller*, 455 P.2d 715 (Okl.Cr.1969). Rules of Evidence are not as rigidly applied at a preliminary hearing as they are at trial. *Magill v. Miller*, su-

pra; *McCurdy v. State*, 39 Okl.Cr. 310, 264 P. 925 (1928). The nature of a preliminary hearing at least serves as a means of discovery for the defendant. *Hampton v. State*, 501 P.2d 523 (Okl.Cr.1972); *Beaird v. Ramey*, 456 P.2d 587 (Okl.Cr.1969). However, in *State v. Fredette*, 462 A.2d 17 (Me.1983), the Supreme Court of Maine resolved the prior testimony objection conflict by applying a form versus substance test to determine the admissability of the testimony. That court categorized objections that only go to the form of the question or answer (as where a question is leading or an answer is non-responsive) must be made at the time the testimony is given, and such objections may not be made for the first time when the testimony is read at a later trial. On the other hand, objections which go to the substance of the testimony (that is, hearsay, for instance, or inadmissable evidence of another crime) may be raised for the first time when the testimony is being read, e.g., *Morrison v. Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981) (a civil case), and Annot., 159 A.L.R. 119.

The above outlined rule should be adopted to use in a criminal setting, with a great deal of consideration for the differences between civil depositions and a preliminary hearing testimony. Emphasis must be placed on the distinction between form and substance objections, and the correct application of the general rule. Testimony that would be lost due to an improper question could be invaluable to the proper disposition of the case. While testimony which is improper when given retains its improper status when read at the subsequent trial, the right of the appellant to confront the witness testifying against him will be protected by keeping out inadmissable testimony by way of substance objections. Otherwise, a form objection is waived if it is not made at the preliminary hearing examination.

---

1. It should be noted that the appellant also contends that the transcript was from the preliminary examination, and that he had a different attorney at the preliminary examination than at trial. This position has no merit. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

In the case at hand, the blanket statement by the trial judge that no objections would be taken during the reading of the transcript was improper, the objections should be allowed to be made in an in-camera hearing. This case reveals no questions or answers that could have properly been objected to and sustained. For this reason, there is no need to reverse for failing to allow defense counsel to object to the testimony from the preliminary hearing. The rule propounded should be adopted for future use in cases that require the use of transcripts from preliminary hearings when the witness is now unavailable for trial.