James FISHER, Jr., Appellant,

v.

. The STATE of Oklahoma, Appellee.

No. F–83–546.

Court of Criminal Appeals of Oklahoma.

May 4, 1987.

Rehearing Granted June 8, 1987.

Thomas G. Smith, Jr., David Autry, Asst. Appellate Public Defenders, Norman, for appellant.

Robert H. Henry, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

James Fisher, Jr., the appellant, was tried by jury and convicted of First Degree Murder under 21 O.S. 1981, § 701.7, in Oklahoma County District Court, Case No. CRF–83–137, before the Honorable William Kessler, sitting as a visiting judge. The jury sentenced the appellant to death. Judgment and sentence was imposed in accordance with the jury's verdict.

Briefly stated, the evidence presented by the State showed that on the evening of either December 11 or 12, 1982, Terry Neal, a bisexual man, traveled to downtown Oklahoma City looking for a male sexual companion. He ultimately picked up the appellant and F.J., who was a fifteen-year-old male prostitute. After stopping to purchase some liquor, the trio drove to Neal's apartment in suburban Oklahoma City. F.J. testified that after Neal and the appellant engaged in oral sex and other homosexual acts, the appellant suddenly grabbed the liquor bottle, slammed it over Neal's head, and then twisted the neck of the broken bottle deep into Neal's neck. F.J. said he complied with a request from the appellant to take Neal's television set, and the two departed in Neal's car. Eventually, a buyer was found for the television, but F.J. denied receiving any of the money. After asking F.J. for directions to Tulsa, the appellant dropped off F.J. near his home in Oklahoma City. Neal's car was found abandoned the next morning outside Jenks, Oklahoma.

The appellant was subsequently arrested at the home of his parents in Buffalo, New York. Detective Gerald Dove testified that after giving the appellant his *Miranda* rights, the appellant admitted that he had hit a guy named "Terry" upside the head with a bottle in Oklahoma City. F.J. was arrested in Houston, Texas, and murder charges filed against him were later dropped when his status was changed to that of a material witness. Dr. Fred Jordan, Chief Medical Examiner for the State of Oklahoma, testified that Neal died from a stab wound to the right side of his neck which completely severed the carotid artery. He recovered a small fragment of green glass from the wound, which penetrated almost to the spine. Dr. Jordan also found an abrasion and a cut on the top of the victim's head, as well as several defensive wounds on his arms and hands.

Appellant testified that he was in Coffeyville, Kansas, on the evening of December 12, 1982. He denied having sex with Neal or stabbing him with a broken bottle. He denied making an inculpatory statement to Detective Dove. On cross-examination, appellant admitted that he was in Oklahoma City in December of 1982, and that he could not remember which day he left to go to Coffeyville.

## I.

### ISSUES RELATING TO JURY SELECTION

Appellant contends that he was denied a fair trial by an impartial cross-section of the community due to the exclusion of potential jurors solely because they were opposed to capital punishment. He claims that such juries are guilt-prone, exclude identifiable groups, and that questioning panel members at the beginning of trial unduly focuses the minds of the jurors on the sentencing phase. This Court has adopted the United States Supreme Court's recent decision in *Lockhart v. McCree,* —— U.S. ——, ——, 106 S.Ct. 1758, 1770, 90 L.Ed.2d 137 (1986), which rejected such a position. *See VanWoundenberg v. State,* 720 P.2d 328, 331–32 (Okl.Cr.1986). Accordingly, this proposition is wholly without merit.

## II.

### ISSUES RELATING TO GUILT-INNOCENCE

#### A.

Appellant complains that the trial court erred by failing to follow the proper statutory procedure in answering questions submitted by the jury during deliberations. The trial court returned the questions to the jury noting that the court could not answer them. The State concedes, and we agree, that the trial court failed to follow the provisions of 22 O.S. 1981, § 894, requiring the trial court to call the jury back into the courtroom in the presence of, or after notice to, the district attorney and defense counsel. Any presumption of prejudice is overcome, however, as we are convinced that on the face of the record no prejudice to the appellant occurred. *See Givens v. State,* 705 P.2d 1139, 1142 (Okl. Cr.1985).

#### B.

Next, appellant asserts that the trial court erred in admitting certain 5″ × 7″ color photographs depicting the victim and the crime scene. The photographs accurately illustrated the wounds of the victim, the position of his body, the crime scene, and corroborated the findings of the medical examiner. We cannot say that the photographs are so gruesome or that their probative value is substantially outweighed by unfair prejudice, as to render them inadmissible. *See Thompson v. State,* 711 P.2d 936, 937 (Okl.Cr.1985); *Nuckols v. State,* 690 P.2d 463, 470 (Okl.Cr.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). *See also* 12 O.S. 1981, § 2403. The trial court did not abuse its discretion in admitting the exhibits. This assignment of error is without merit.

#### C.

Appellant claims that he was prejudiced when the trial court denied his motion requesting a continuance for one afternoon. After the State rested its case about 11:30 a.m., defense counsel asked that a recess be granted, asserting that his client had taken two tablets of Mellaril to control his anxiety, that he was unable to think clearly, and that eating lunch would alleviate his condition. The trial court agreed to the request, and recessed until 1:30 p.m., at which time defense counsel requested a continuance until the following morning, stating that the appellant's condition had not improved as expected.

In an *in camera* hearing, appellant testified that he had "saved" two Mellaril tablets from several evenings before, and that he took them between 6:00 and 8:00 a.m. that morning. He said that the medication made him drowsy, unable to think clearly, and that he felt intoxicated. Dr. Don Chumley, chief physician for the Oklahoma County jail, prescribed one tablet of Mellaril to be administered to the appellant in the evenings. In Dr. Chumley's opinion, the appellant could not have "stockpiled" the medication in view of the strict dispensation procedures followed by jail personnel. Dr. Chumley said that even assuming that the appellant had taken two of the Mellaril tablets that morning, the medication would have reached a peak strength within two hours after ingestion, and the effects would have tapered off until they were

completely worn off in six (6) hours. Two witnesses testified that the appellant acted no different on this day than on previous occasions, and that he did not appear to be under the influence of drugs. The trial court overruled the request, finding that even if the appellant had taken the medication, it had not hampered his ability to think or communicate. Appellant then testified coherently in his own behalf before the jury. On the foregoing record, we cannot say that the trial court abused its discretion in denying the continuance. *See Behrens v. State,* 699 P.2d 156, 158 (Okl. Cr.1985); *White v. State,* 607 P.2d 713, 714 (Okl.Cr.1980).

### D.

■ Appellant next contends that the trial court committed fundamental error in failing to give instructions *sua sponte* covering three issues: (1) the defense of alibi; (2) the need to exercise caution in evaluating the testimony of an informant; and (3) the existence of lesser included offenses. We disagree. Initially, we note that defense counsel failed to object on these grounds, and that he failed to submit written requested instructions to the trial court. Therefore, unless the failure to instruct resulted in a miscarriage of justice or deprived the appellant of a substantial right, no reversible error occurred. *See Millwood v. State,* 721 P.2d 1322, 1325–26 (Okl.Cr.1986); 20 O.S.1981, § 3001.1.

### 1.

■ Regarding the failure to instruct on alibi, we note that the trial court did not deny the appellant the opportunity to fully explore this defense. Moreover, the jury was properly instructed on the essential elements of the offense, the presumption of innocence, and the State's burden to prove the elements of the offense charged beyond a reasonable doubt. The jury obviously disbelieved the appellant's claim to have been elsewhere at the time of the offense. Appellant's own bald assertions are woefully inadequate to establish that, at the very time of the offense, he was so far away that he could not have partici-

pated in its commission. Indeed, appellant conceded on cross-examination that he could not remember what day he left Oklahoma City. *Compare Henderson v. State,* 716 P.2d 691, 693 (Okl.Cr.1986) (insufficient evidence to support alibi instruction); *State v. Elisondo,* 103 Idaho 69, 644 P.2d 992, 995 (Ct.App.1982) (defendant's mere denial that he was at the place where the crime was committed insufficient to support alibi instruction). In the instant case, the record strongly supports the conclusion that the victim was killed sometime between 4:00 p.m. on December 11, 1982, when his wife last saw him alive, and 8:00 a.m. on the morning of December 12, 1982, when the victim's car was found abandoned near Jenks, Oklahoma. Thus, even assuming that appellant was actually in Coffeyville, Kansas, on the evening of December 12, 1982, as he testified, he has failed to establish that he could not have participated in the homicide. Therefore, on this record, we are persuaded that the failure to instruct on alibi did not result in a miscarriage of justice or deprive the appellant of a substantial right. This assignment of error is without merit.

### 2.

■ We are also convinced that the appellant was not deprived of a substantial right by the failure of the trial court to give an instruction on the credibility of informant testimony. The record does not support a finding that the alleged informant, F.J., provided evidence against the appellant for pay or for immunity from punishment. Any evidence of personal advantage or vindication was revealed to the jury through effective cross-examination, when F.J. admitted that murder charges filed against him had been dropped. *See generally* OUJI–CR 844 (1981). The undisputed evidence reflects that F.J. was not involved in the planning or commission of the offense, and that following the murder, F.J. accompanied the appellant out of fear that he might also be hurt if he refused to cooperate. Moreover, the jury was fully advised as to its role in evaluating the credibility of witnesses by the trial court's giving of a general instruction. Thus, on

this record, we cannot say that the appellant was deprived of a substantial right. *See Frazier v. State,* 706 P.2d 165, 167 (Okl.Cr.1985); *Gee v. State,* 538 P.2d 1102, 1106 (Okl.Cr.1975). This assignment of error is without merit.

### 3.

■ We must also reject appellant's assertion that he was entitled to instructions on the lesser included offenses of second degree murder and first degree manslaughter. Under appellant's elected defense of alibi, he was either guilty of first degree murder or he was innocent. *See Spuehler v. State,* 709 P.2d 202, 204 (Okl.Cr.1985); *Seegars v. State,* 655 P.2d 563, 565 (Okl.Cr. 1982). Appellant was thus not entitled to any instructions on lesser included offenses, and this assignment of error is without merit.

### E.

■ In his seventh assignment of error, appellant claims that he was prejudiced by prosecutorial misconduct during voir dire, opening statement, cross-examination of himself, and closing argument. When taken in context, we believe that the questions and comments of the prosecutor were for the most part within the bounds of reasonable argumentation. Most of the allegedly improper comments were not objected to, nor was a request for admonishment made. Although at one point the prosecutor came close to improperly requesting sympathy for the victim, in light of the strong evidence of guilt, we cannot say that any of the comments were so grossly improper as to require reversal or modification. *See Grant v. State,* 703 P.2d 943, 946 (Okl.Cr. 1985); *Brodbent v. State,* 700 P.2d 1021, 1022–23 (Okl.Cr.1985).

### III.

### ISSUES RELATING TO PUNISHMENT

In support of its request that the death penalty be imposed, the State alleged the existence of two statutory aggravating circumstances: (1) that the murder was especially heinous, atrocious or cruel, and (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S. 1981, § 701.-12(4) & (7). During the second stage of trial, the State presented no new evidence, but simply incorporated the evidence that had been presented in the first stage. The jury found the existence of both aggravating circumstances.

### A.

■ Appellant argues that there was insufficient evidence to support the aggravating circumstances of continuing threat. He claims that in the absence of evidence of prior or subsequent criminal acts by the defendant, or psychiatric testimony showing future dangerousness, a finding in support of the aggravating circumstance cannot stand. We disagree.

This Court has consistently held that the calloused manner in which a crime is committed may support a finding of a continuous threat. *See Ross v. State,* 717 P.2d 117, 123–24 (Okl.Cr.1986); *Green v. State,* 713 P.2d 1032, 1045 (Okl.Cr.1985), *overruled on other grounds, Brewer v. State,* 718 P.2d 354, 365–66 n. 1 (Okl.Cr.1986); *Robison v. State,* 677 P.2d 1080, 1088 (Okl. Cr.1984), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). In this case, the record supports a finding that the victim was brutally attacked in a particularly calloused fashion. We find that there is sufficient evidence to support this aggravating circumstance. This assignment of error is without merit.

### B.

■ We likewise reject appellant's contention that the evidence does not support the jury's finding that the murder was especially heinous, atrocious or cruel. The appellant argues that the evidence does not show that Neal's death was preceded by "torture" or "serious" physical abuse. First, we note that the statute is written in the disjunctive, and torture is not the only factor justifying a finding that a murder is especially heinous, atrocious or cruel. *See Liles v. State,* 702 P.2d 1025, 1032 (Okl.Cr.

1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). In *Liles,* we noted that the manner of killing as well as the killer's attitude was a relevant concern. *Id.* Second, the evidence showed that the appellant grabbed the victim's hair in pulling his head back, and then viciously rammed a broken liquor bottle into the victim's neck penetrating almost to the spine. The record is totally devoid of any evidence of provocation. The savagery of the attack is further shown by the severity of the defense wounds to the victim's arms and hands. This aggravating circumstance was amply supported by the evidence. *See Foster v. State,* 714 P.2d 1031, 1040 (Okl. Cr.1986); *Liles v. State, supra; Nuckols v. State,* 690 P.2d 463, 472–73 (Okl.Cr.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

### C.

Having previously found sufficient evidence to support both aggravating circumstances found by the jury, it is unnecessary to address appellant's claim that the invalidation of one of the aggravating circumstances requires modification of the death sentence to life imprisonment.

### D.

■ We also cannot accept appellant's claim that the continuing threat aggravating circumstance is so vague as to require a jury instruction specifically defining its elements, or that it is being evaluated in an arbitrary manner. *See VanWoundenberg v. State,* 720 P.2d 328, 336–37 (Okl.Cr. 1986); *Liles v. State,* 702 P.2d 1025, 1031– 32 (Okl.Cr.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). Likewise, we reject appellant's assertion that the heinous, atrocious or cruel aggravating circumstance is being applied in a capricious manner. *See Smith v. State,* 727 P.2d 1366, 1372–73 (Okl.Cr.1986); *Liles v. State, supra.*

### E.

In his sixteenth assignment of error, appellant claims that his death sentence must be set aside because the mitigating circum-

stances outweigh the aggravating circumstances. The State contends that although this Court has a duty to weigh the mitigating circumstances against the aggravating circumstances, the decision of the jury imposing death should not be disturbed where the record contains sufficient evidence to support such a finding. The State quotes the following language from *Jones v. State,* 648 P.2d 1251, 1260 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983), in support of its position:

> It is the duty of the jury to weigh the aggravating circumstances against the mitigating circumstances in determining whether to impose the death penalty. Here, there is sufficient evidence to sustain the jury's finding that the aggravating circumstances outweighed the mitigating circumstances.

On the other hand, appellant urges that this Court has an independent duty to determine whether the aggravating circumstances outweigh the mitigating circumstances. In support of this position, appellant cites *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1983). *Burrows,* however, represented a badly divided Court. In *Burrows,* Judge Bussey voted to affirm both the judgment and sentence while Judge Cornish voted to affirm the judgment, but modify the punishment to life imprisonment because he felt the mitigating circumstances outweighed the aggravating circumstances. *Id.* at 552–553. Judge Brett voted to reverse the judgment on the ground of insufficient evidence to show malice aforethought, but agreed to a modification in light of the views held by his colleagues.

Appellant quotes the following passage from Judge Cornish's separate opinion:

> [I]t is the Court's duty, where the evidence supports at least one statutory aggravating circumstance, to weigh that against the mitigating factors instructed by the court, as well as against any additional factors made known to the jury at trial. *Merely to find that capital punishment was factually supported or justified by the evidence does*

*not rise to the separate and independent judgment required of the reviewing court in death penalty cases.* It is incumbent upon this Court to ensure that the death penalty is evenly enforced and not inflicted in an arbitrary and capricious manner. (citation omitted) (emphasis added)

*Burrows v. State,* 640 P.2d 533, 552–53 (1982) (Cornish, J., concurring in part and dissenting in part).

The United States Supreme Court has stated that the sentencer in a death penalty case, and the appellate court on review, "may determine the weight to be given relevant mitigating evidence." *Eddings v. Oklahoma,* 455 U.S. 104, 115, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). The Court has also indicated in dicta that an appellate court does, to some extent, independently reweigh the balance of mitigating and aggravating circumstances. *See Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984).

▊▊▊ We hold that this Court will review such evidence only to the extent necessary to determine whether there was sufficient evidence from which a rational sentencer could find that the balance of aggravating and mitigating circumstances warranted a death sentence. We believe that this standard, which is analogous to the sufficiency of the evidence standard adopted by this Court in *Spuehler v. State,* 709 P.2d 202, 203–04 (Okl.Cr.1985), comports with the requirements of due process and adequately ensures that the death penalty is evenly enforced. Applying this standard to the instant case, we find that there was sufficient evidence from which a rational sentencer could find that the aggravating circumstances outweighed the mitigating circumstances. Thus, this assignment of error is without merit.

#### F.

▊▊▊ We must reject appellant's contention that the comments made by the prosecutor in closing argument during the second stage injected passion and prejudice into the jury deliberations. Although we agree that the prosecutor erred in asking the jury to be the "people's defender", we cannot say that this isolated statement was so grossly improper as to require modification, especially in light of the strong evidence against the appellant. *See Hays v. State,* 646 P.2d 1311, 1312 (Okl.Cr.1982). *See also Elvaker v. State,* 707 P.2d 1205, 1207 (Okl.Cr.1985).

#### IV.

### ISSUES RELATING TO EFFECTIVE ASSISTANCE OF COUNSEL

▊▊▊ We now address appellant's claim that he was denied effective assistance of counsel during both stages of trial. Initially, we note that an accused has a fundamental right to the reasonably effective assistance of counsel, regardless of whether counsel is appointed or retained. U.S. Const. amend. VI, XIV; Okla. Const. art. II, § 20. *See also Evitts v. Lucey,* 469 U.S. 387, 395, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). The issue is whether counsel exercised the skill, judgment, and diligence of a reasonably competent defense attorney in light of his overall performance. *See Cotton v. State,* 679 P.2d 1305, 1308 (Okl.Cr.1984). The purpose of the effective assistance guarantee is to require the prosecution's case to survive the crucible of meaningful adversarial testing so that the accused receives a fair trial. *See United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984).

▊▊▊ Our analysis of an ineffective assistance of counsel claim must begin with the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice.[1] *Strickland v. Washington,* 466 U.S.

---

1. Actual or constructive denial of the assistance of counsel at a critical stage is legally presumed to result in prejudice. *See United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984); *Strickland v.* *Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). The same result applies where counsel is burdened by an actual conflict of interest which adversely affected his performance. *Cuyler v. Sullivan,* 446 U.S. 335,

668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The claimant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.* at 688–89, 104 S.Ct. at 2065–66; *Kimmelman v. Morrison,* — U.S. —, —, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). In order to establish prejudice, the claimant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that undermines confidence in the outcome. *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. Although we must consider the totality of the evidence which was before the factfinder, our "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 695, 104 S.Ct. at 2069. In addition, if it is easier to dispose of an ineffectiveness claim on the lack of sufficient prejudice, that course should be followed. *Id.* at 696, 104 S.Ct. at 2070.

### A.

With regard to the guilt-innocence stage of trial, the appellant argues that the following acts and omissions constituted ineffective assistance: (1) failure to rehabilitate potential jurors; (2) failure to conduct an adequate investigation; (3) failure to object to alleged prosecutorial misconduct; (4) eliciting evidence of other crimes from appellant on direct examination; (5) failure to submit requested instructions; and (6) waiving closing argument.

### 1.

 With regard to the five venirepersons that appellant claims defense counsel erred in failing to attempt to rehabilitate, our review of their responses indicates that they were properly removed under the current standard set forth in *Wainwright v. Witt,* 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). Appellant has not presented any evidence that the excused jurors could have been rehabilitated so as to satisfy the standards of *Witt,* and we

will not require defense counsel to perform acts of futility. Appellant has wholly failed to show that his claim has merit under *Witt,* and that there is a reasonable probability that the verdict would have been different if defense counsel had attempted rehabilitation. Thus, appellant has failed to demonstrate actual prejudice. *See Kimmelman v. Morrison,* — U.S. —, —, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) (where failure to litigate a fourth amendment claim competently is principal assertion of ineffective assistance, defendant must prove merit of claim and a reasonable probability the verdict would have been different absent the excludable evidence in order to show prejudice). Accordingly, this claim is without merit.

### 2.

In arguing that defense counsel failed to conduct a reasonable investigation, appellant primarily relies on an affidavit accompanying a request for attorney fees in which defense counsel stated that he spent "[a]pproximately 6 hours in interviews with defendant" between the time he was appointed and trial. Appellant has shown nothing more than mere speculation, however, that defense counsel's pretrial investigation and preparation consisted solely of the time stated in the affidavit for attorney fees.

 Moreover, the United States Supreme Court has refused to adopt a per se rule requiring a specified period of time in which defense counsel in a capital case must be appointed before trial, for the purpose of pretrial preparation. *See Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940) (appointment of counsel in a capital case three days before trial did not constitute ineffective assistance per se). *See also Morris v. Slappy,* 461 U.S. 1, 11–14, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983); *Chambers v. Maroney,* 399 U.S. 42, 54, 90 S.Ct. 1975, 1982–83, 26 L.Ed.2d 419 (1970) (refused to adopt a per se rule requiring reversal or an evidentiary hearing following tardy appointment of counsel). In the instant case, defense counsel was appointed sixteen weeks prior

350, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980).

to trial. In addition, defense counsel represented appellant at his preliminary hearing, which this Court has recognized is an important discovery tool. *See Hampton v. State*, 501 P.2d 523, 527 (Okl.Cr.1972). *See also Perkins v. State*, 695 P.2d 1364, 1369 (Okl.Cr.1985) (Parks, P.J., specially concurring). Therefore, we also refuse to adopt a per se rule requiring a specified minimum number of hours to be spent by defense counsel in pretrial investigation and preparation of a capital case. Our refusal to adopt a per se rule, however, should not be construed to mean that this Court is unwilling to take appropriate action when defense counsel's pretrial preparation and investigation are so woefully inadequate as to undermine confidence in the outcome of the trial. We simply hold in the instant case, in the absence of any showing that further investigation would have led to evidence which would have materially aided the defense so as to create a reasonable probability that the result of the trial would have been different, appellant has failed to meet the prejudice prong of his ineffective assistance claim.

### 3.

█ Having previously found in parts II(E) and III(F) of this opinion that none of the alleged improper prosecutorial questions or comments were so grossly improper as to have affected the verdict or sentence, we find that appellant has failed to show that defense counsel was deficient in failing to make proper objections. In addition, we must recognize that for the most part deciding when and if to object to portions of the prosecutor's closing argument is a matter of trial tactics and strategy. Appellant has made no showing of prejudice.

### 4.

█ Appellant next claims that he was prejudiced when defense counsel elicited evidence of past drug use on direct examination. Our review of the record, however, reveals that in response to defense counsel's specific question of whether appellant had ever used narcotics, appellant answered "No". Appellant apparently subsequently surprised defense counsel by volunteering evidence of past drug use in response to general questions. Defense counsel tried to limit the effect of such testimony through further examination. In light of the foregoing circumstances, and the presence of strong evidence of guilt, we cannot say that the absence of such evidence would have created a reasonable probability of a different verdict. This claim is without merit.

### 5.

Next, we must reject appellant's claim that he was prejudiced by defense counsel's failure to submit requested instructions on the defense of alibi, the testimony of informants, and lesser included offenses, as we have previously found that appellant was not deprived of any substantial rights with regard to the instructions on alibi and informants, and was not entitled to instructions on lesser included offenses. *See* Part II(D), *supra.*

### 6.

Finally, appellant complains that he was denied effective assistance of counsel when his attorney failed to present a closing argument. This Court is most concerned with this allegation because of the importance of the closing argument in a trial and the corresponding Sixth Amendment concerns. *See, e.g., Herring v. New York*, 422 U.S. 853, 858, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 543 (1975) ("[C]losing argument for the defense is a basic element of the adversary factfinding process in a criminal trial."). *Herring* invalidated a New York law that empowered a trial judge to deny absolutely the opportunity for any closing argument at all. Thus, *Herring* is distinguishable from the instant case where counsel as a matter of trial strategy, chose not to give a closing argument.

█ Appellant has failed to overcome the presumption that waiver of closing argument might be considered sound trial strategy. *See Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984). Indeed, in this case the tactic actually resulted in pre-

venting the prosecutor from making a final closing argument. Furthermore, appellant has failed to show that, absent this alleged error, the jury would have had a reasonable doubt regarding guilt. The evidence against the appellant was strong. Appellant was seen committing the murder by an eyewitness whose testimony was corroborated by the physical evidence presented, and also by the inculpatory statement made by appellant to New York police following his arrest. In conclusion, in light of the strong evidence of guilt and the fact that the appellant himself volunteered contradictory statements during his testimony, we cannot say that counsel's tactic was not sound trial strategy or that it affected the verdict. *See State v. Menn*, 668 S.W.2d 671, 673 (Tenn.Crim.App.1984). In our evaluation of counsel's overall performance and the specific errors and omissions alleged by appellant, we cannot say that he was denied effective assistance of counsel during the guilt-innocence stage of trial. *See Liles v. State*, 702 P.2d 1025, 1035 (Okl.Cr.1985).

### B.

We now address what we perceive to be the more difficult question of whether the appellant received effective assistance of counsel during the sentencing stage. As we have previously stated, the State did not introduce any new evidence during the second stage, but expressly incorporated the evidence presented in the first stage as being supportive of the aggravating circumstances. Appellant asserts that he was denied effective assistance of counsel during the sentencing stage as a result of counsel's unequivocal surrender. In support of his claim, appellant accurately points out that defense counsel made no opening statement, presented no new mitigating evidence, and gave no closing argument. The only action taken by defense counsel in the second stage was an objection to the prosecutor's comment that the appellant was nineteen going on forty, which was overruled by the trial judge.

This Court has refused to apply a *per se* rule that the failure to present mitigating evidence in the second stage of a capital case constitutes ineffective assistance of counsel. *See Coleman v. State*, 693 P.2d 4, 7 (Okl.Cr.1984); *Stafford v. State*, 669 P.2d 285, 296 (Okl.Cr.1983). Initially, we note that the trial judge did not preclude the jury from considering any relevant mitigating evidence proffered by the appellant. *But see Skipper v. South Carolina*, 476 U.S. ——, ——, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1 (1986). Moreover, we find it significant that the trial judge instructed the jury on the mitigating evidence which was brought out in testimony during the first stage:

### INSTRUCTION NO. 7

Evidence has been offered as to the following mitigating circumstances:

1. The defendant has no significant history of prior violent criminal activity;
2. The defendant served in the U.S. Navy for about one year;
3. The defendant is nineteen years of age.

In addition, the trial court instructed the jury on eight minimum mitigating circumstances that it must consider in determining the sentence, and that the jury was not limited to those minimum mitigating circumstances. We also reject appellant's contention that defense counsel did not investigate possible mitigating circumstances, because the record clearly reveals that counsel elicited the foregoing mitigating circumstances on direct examination of the appellant during the first stage. Further, appellant has failed to demonstrate that any mitigating evidence other than that brought before the jury in the first stage was available. *See Stafford v. State*, 669 P.2d 285, 296 (Okl.Cr.1983).

Our review of the record supports the conclusion that defense counsel deliberately limited his participation in the sentencing stage as a matter of trial strategy. Appellant has failed to rebut the presumption that the actions of defense counsel might be considered sound trial strategy. *Strickland v. Washington*, 466 U.S. at 688–89, 104 S.Ct. at 2065–66. On this record, and in light of the appellant's lack

of credibility as a witness as shown by his obvious contradictions in testimony, we cannot say that no reasonable attorney would have chosen this strategy. We hold that appellant has simply failed to establish that, absent defense counsel's conduct in the sentencing stage, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069.

## V.

### MANDATORY SENTENCE REVIEW

#### A.

▪ Finally, pursuant to 21 O.S.Supp. 1985, § 701.13(C), we are called upon to determine two issues in all capital cases:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

2. Whether the evidence supports the jury's finding of a statutory aggravating circumstance as enumerated in Section 701.12 of this title.

First, from our review of the record, we cannot say that the jury was influenced by passion, prejudice, or any other arbitrary factor. Second, the jury specifically found that the murder was especially heinous, atrocious or cruel, and that there existed a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1981, § 701.12. We have previously determined that both of these findings are supported by competent evidence. The evidence shows that the appellant, in a particularly calloused manner, stabbed the victim in the throat with a broken liquor bottle. The evidence of guilt and of the aggravating circumstances is extremely strong in this case.

#### B.

▪ In accordance with my view that the application of 21 O.S.Supp.1985, § 701.-13(C), which became effective July 16, 1985, to cases pending on appeal at the time the statute was passed renders the enactment an *ex post facto* law, I find it necessary to conduct the proportionality review which was formerly required under 21 O.S.1981, § 701.13(C). Although a majority of this Court now holds that such a proportionality review is unnecessary, *see Foster v. State,* 714 P.2d 1031, 1041 (Okl. Cr.1986), I have compared the sentence imposed herein to previous cases which this Court has either affirmed [2] or modified [3] and find the sentence to be proper.

**2.** *Brecheen v. State,* 732 P.2d 889 (Okl.Cr.1987); *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987); *Smith v. State,* 727 P.2d 1366 (Okl.Cr.1986); *Thompson v. State,* 724 P.2d 780 (Okl.Cr.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 143 (1987); *Walker v. State,* 723 P.2d 273 (Okl.Cr.1986); *VanWoundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Newsted v. State,* 720 P.2d 734 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); *Brewer v. State,* 718 P.2d 354 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986); *Ross v. State,* 717 P.2d 117 (Okl.Cr.1986); *Bowen v. State,* 715 P.2d 1093 (Okl.Cr.1985), *vacated sub nom. Bowen v. Maynard,* 799 F.2d 593 (10th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 458, 93 L.Ed.2d 414 (1986); *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986); *Green v. State,* 713 P.2d 1032 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986); *Liles v. State,* 702 P.2d 1025 (Okl.Cr. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1985); *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985); *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985), *cert. denied,* 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985), *aff'd,* 708 P.2d 592 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 837, 88 L.Ed.2d 808 (1986); *Brogie v. State,* 695 P.2d 538 (Okl. Cr.1985); *Stout v. State,* 693 P.2d 617 (Okl.Cr. 1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); *Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850 (1984), *modified,* 812 F.2d 593 (10th Cir.1987); *Stafford v. State,* 669 P.2d 285 (Okl.Cr.1983), *vacated,* 467 U.S. 1212, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984), *aff'd on remand,* 697 P.2d 165 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983), *cert. denied,* 464 U.S. 1073, 104

Accordingly, finding no error warranting reversal or modification, the judgment and sentence of the trial court is AFFIRMED.

BRETT and BUSSEY, JJ., concur.

S.Ct. 986, 79 L.Ed.2d 222 (1984), *aff'd,* 693 P.2d 4 (Okl.Cr.1984); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983), *vacated,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), *aff'd on remand,* 700 P.2d 223 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983); *Ake v. State,* 663 P.2d 1 (Okl.Cr.1983), *rev'd,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Parks v. State,* 651 P.2d 686 (Okl.Cr. 1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983), *aff'd,* 704 P.2d 1138 (Okl.Cr.1985); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *modified on other grounds sub nom. Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984), *cert. denied,* 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984), *aff'd as modified,* 699 P.2d 159 (Okl.Cr.1985).

**3.** *Parker v. State,* 713 P.2d 1032 (Okl.Cr.1985); *Kelly v. State,* 692 P.2d 563 (Okl.Cr.1984); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), *modified,* 688 P.2d 342 (Okl.Cr.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1750, 84 L.Ed.2d 814 (1985); *Morgan v. State,* No. F–79–487 (Okl.Cr. Nov. 14, 1983) (Unpublished); *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983); *Jones v. State,* 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Munn v. State,* 658 P.2d 482 (Okl.Cr.1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983); *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981), *cert. denied,* 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982); *Irvin v. State,* 617 P.2d 588 (Okl.Cr. 1980).